**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court."
Although it is posted on the internet, this opinion is binding only on the
parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1135-16T1

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

JOSHUA Q. ROBINSON,

    Defendant-Appellant.

_____

Submitted October 25, 2017 — Decided November 13, 2017

Before Judges Alvarez and Nugent.

On appeal from Superior Court of New Jersey, Law Division, Hudson County, Indictment No. 11-02-0303.

Joseph E. Krakora, Public Defender, attorney for appellant (Janet A. Allegro, Designated Counsel, on the brief).

Esther Suarez, Hudson County Prosecutor, attorney for respondent (Erin M. Campbell, Assistant Prosecutor, on the briefs).

PER CURIAM

Defendant appeals from an August 25, 2016 order denying without an evidentiary hearing his petition for post-conviction relief (PCR). He argues the following points on appeal:

POINT I    THE COURT ERRED IN DENYING DEFENDANT'S PETITION FOR POST-CONVICTION RELIEF WITHOUT AFFORDING HIM AN EVIDENTIARY HEARING TO FULLY ADDRESS HIS CONTENTION THAT HE FAILED TO RECEIVE EFFECTIVE LEGAL REPRESENTATION.

(A) THE PREVAILING LEGAL PRINCIPLES REGARDING CLAIMS OF INEFFECTIVE ASSISTANCE OF COUNSEL ARISING OUT OF EVIDENTIARY HEARINGS AND PETITIONS FOR POST CONVICTION RELIEF.

1. TRIAL COUNSEL'S MISREPRESENTATION REGARDING WHETHER DEFENDANT WOULD RECEIVE JAIL CREDIT OR GAP TIME CREDIT RESULTING IN DEFENDANT'S INVOLUNTARY GUILTY PLEAS CONSTITUTED INEFFECTIVE ASSISTANCE OF COUNSEL.

POINT II   THE PCR COURT ERRED IN DENYING DEFENDANT'S PLEA WITHDRAWAL.

1. TRIAL COUNSEL'S INCORRECT ADVICE REGARDING GAP TIME AND JAIL TIME CREDIT RESULTED IN DEFENDANT'S INVOLUNTARY GUILTY PLEA.

2. THE COURT ERRED IN FINDING THAT [DEFENDANT] DID NOT SATISFY THE FOUR FACTORS OF STATE V. SLATER, 198 N.J. 145 (2009).

We affirm.

A Hudson County grand jury charged defendant and three co-defendants in a multi-count indictment with first-degree murder and other offenses. Defendant accepted a plea offer and pleaded guilty to an amended charge of second-degree manslaughter, N.J.S.A. 2C:11-4(b)(2).

During the plea proceeding, while summarizing the plea agreement, the prosecutor informed the court:

The State will be recommending a sentence of ten years. The [eighty-five] percent No Early Release Act would apply. The three year period of parole would apply. [Defendant] has a prior Graves Act conviction involving an aggravated assault involving a gun. So it's a mandatory Graves Act extended on this case.

We're asking that this sentence be consecutive to the Federal sentence he is currently serving. He received 188 months on that sentence. . . . [H]e was sentenced on November 28th, 2012. So from the State's position he's entitled to direct jail time credit to that date. It would be gap time credit from that date forward.

The court responded: "Okay. So, if I'm clear, from the date of his arrest until November 28, 2012, jail credit, and from November 28, 2012, henceforth, is gap time credit?" The prosecutor replied, "[t]hat's correct."

Defense counsel, in defendant's presence, informed the court the prosecutor's recitation of the plea agreement was correct. Defense counsel also informed the court that at the time of sentencing, "we will put forth arguments for a . . . concurrent sentence, . . . and for total credit for the whole four years as [defendant has] been in [county jail] that whole time."

The court asked defendant to provide a factual basis for the plea. Defendant admitted that on June 5, 2010, in Jersey City, he went to the waterfront area where he shot the victim. He claimed to do so under provocation, namely, that the victim pulled

out a gun. Defendant stipulated through counsel he shot the victim in the abdomen. The medical examiner found the abdomen wound to be a contributory cause of death. The other cause was by drowning, but according to the stipulation, that occurred at the hands of others.

In response to the court's questions, defendant acknowledged he had the opportunity to "exit the area" without shooting the victim, but defendant chose to shoot the victim rather than to flee. Defendant also said he understood the prosecutor would recommend a ten-year prison term, of which defendant would have to serve eight and one-half before being considered for parole. Lastly, defendant acknowledged he would be required to undergo three years of parole supervision upon his release from jail, and that if he violated parole supervision, he would return to jail for the entire three years.

The court explained the State was recommending the sentence be served consecutively to defendant's federal sentence and that defense counsel would ask for the sentence to be served concurrently. The court also explained it would make the decision to impose either a concurrent or consecutive sentence at the time of sentencing, not before. Defendant said he understood. When the court asked if defendant had any questions for either his

counsel or the court, defendant responded: "No. On sentence day I'll ask."

Lastly, the court asked if defendant understood it would

> be very difficult to change [his] mind and take [his] guilty plea back, because [the court is] likely to believe what [defendant] just told [the court] that [defendant] shot this individual and . . . didn't have to, [defendant] could have fled, even though [he was] provoked, which shows [the court he's] guilty, . . . rather than . . . something [defendant] later [says] trying to take it back.

Defendant said he understood. The court then informed defendant that once the court imposed the sentence, it would be even harder for defendant to change his mind and take his plea back. Defendant again said he understood.

When defendant was sentenced, his attorney argued that he should receive jail credits for the entire time he was in jail before being sentenced, including the time he spent in jail after imposition of the federal sentence. Counsel claimed defendant had not posted bail on the Hudson County indictment, was returned to Hudson County jail after being sentenced on the federal charges, and remained in the Hudson County jail until appearing before the court for sentencing on the Hudson County charge. Defendant did not dispute at sentencing, and does not dispute on appeal, that

he was not entitled to jail credits once he began serving his federal sentence.

The trial court sentenced defendant in accordance with the plea agreement to ten years with eight and one-half years of parole ineligibility and a three-year term of parole supervision. The court ordered defendant to serve the sentence consecutively to the federal sentence.

One year and three months after the court sentenced defendant, defendant filed a PCR petition. Defendant asserted five points in his petition: (1) there was a "questionable factual basis" for his plea; (2) the trial court erroneously considered a companion case during sentencing; (3) the court committed error by requiring that petitioner had to flee to support passion-provocation; (4) defense counsel "labored under a conflict of interest"; and (5) defense counsel "failed to appear and sent a representative who was not prepared to vigorously champion petitioner's cause."

Thereafter, defendant filed an amended verified petition in which he made two additional arguments: his attorneys were ineffective for misrepresenting the amount of jail credits he would receive upon sentencing, and his attorneys were also ineffective for telling him he could not withdraw his guilty plea. He claimed that if he knew he would not receive 604 days of jail credit for the time between the sentencing on the federal charges

6

and the sentencing on the State manslaughter charge, he would not have pleaded guilty. He also claimed that had he known he could have filed a motion to withdraw his guilty plea, he would have done so. Defendant asserted his innocence, claimed he acted in self-defense, and maintained that his actions were not the cause of the victim's death. His counsel filed a supporting brief.

Following oral argument, the Honorable Joseph V. Isabella denied defendant's petition without an evidentiary hearing. In a comprehensive written opinion, after reviewing applicable precedent, Judge Isabella addressed each of defendant's arguments. Addressing defendant's claim concerning jail credits on the federal charges, Judge Isabella pointed out that nothing in the record supported defendant's claim. To the contrary, the plea forms reflected the State would recommend gap time credits after defendant was sentenced on November 28, 2012. Judge Isabella, who had presided over the plea and sentencing proceedings, noted he had asked, and defendant had acknowledged, that the plea forms were correct. Defendant further acknowledged counsel had explained each question to him, defendant understood them, and that no one had promised him anything that was not in the plea forms.

Judge Isabella also noted that at the outset of defendant's plea proceeding, the State, among other things, said defendant was

only entitled to gap time credits following his federal sentence. After the prosecutor spoke, the court reiterated the State's position that defendant would receive gap time credit for time spent in jail following his federal sentence on November 28, 2012, before imposition of his sentence on the State manslaughter offense. Judge Isabella concluded that in light of defendant's plea form and the colloquy concerning gap time credits during the plea proceedings, defendant's bald allegation his attorney promised him gap time credits had no factual basis.

Similarly, Judge Isabella determined defendant's bald assertion that his attorney told him he could not withdraw his plea was unsupported by anything in the record. The judge explained that before accepting the plea, he assured himself defendant knowingly and voluntarily pleaded guilty. Moreover, the judge had advised defendant that if defendant pleaded guilty, it would be difficult to withdraw the plea and would be even more difficult once defendant was sentenced. Defendant never inquired about withdrawing his plea either before or during the sentencing proceeding. Nonetheless, Judge Isabella analyzed the criteria set forth in State v. Slater, 198 N.J. 145, 157-58 (2009). Based on the Slater criteria, Judge Isabella denied defendant's argument that he should be permitted to withdraw his plea.

We affirm, substantially for the reasons expressed by Judge Isabella in his August 25, 2016 written opinion. Defendant's arguments are without sufficient merit to warrant further discussion. R. 2:11-3(e)(2).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION