966 A.2d 461

STATE OF NEW JERSEY, PLAINTIFF–RESPONDENT,
v. TONY L. SLATER, DEFENDANT–APPELLANT.

Argued October 7, 2008—Decided February 4, 2009.

146

147

148

*Raquel Y. Bristol,* Assistant Deputy Public Defender, argued the cause for appellant (*Yvonne Smith Segars,* Public Defender, attorney).

*Michael J. Williams,* Deputy Attorney General, argued the cause for respondent (*Anne Milgram,* Attorney General of New Jersey, attorney).

Chief Justice RABNER delivered the opinion of the Court.

Defendant Tony Slater pleaded guilty to possession of cocaine with intent to distribute and sought to withdraw his plea before sentencing. The sole question in this appeal is whether the trial court correctly denied defendant's motion to set aside the plea.

In evaluating motions to withdraw a guilty plea, trial courts should consider the following factors: (1) whether the defendant has asserted a colorable claim of innocence; (2) the nature and strength of defendant's reasons for withdrawal; (3) the existence of a plea bargain; and (4) whether withdrawal would result in unfair prejudice to the State or unfair advantage to the accused. On balancing those factors in the context of defendant's presentence motion to withdraw, we find that defendant has carried his burden and is entitled to withdraw his guilty plea. We therefore reverse the judgment of the Appellate Division, which affirmed the trial court's ruling.

I.

On March 31, 2002, two officers with the Buena Borough Police Department wanted to question Timmy Hass about a series of burglaries. The officers contacted their counterparts at the Millville Police Department, patrolmen Terry Fawcett and David

Kahn, for help in locating Hass. In response, Fawcett and Kahn spoke to a Mr. F. Mr. F. told them that Hass and another person, Jeffrey Neider, both white males, might be located in Room 261 at the Millville Motor Inn. Mr. F. also relayed that the two men probably had one-half ounce of cocaine with them in the room. Fawcett and Kahn checked for outstanding warrants and learned of two warrants for Neider's arrest.

The officers proceeded to Room 261 at the Millville Motor Inn and knocked on the door. An African–American male answered; he gave the officers a false name at first and was later identified as defendant Tony Slater. At this point, the officers had no reason to believe that Slater was involved in any wrongdoing.

Kahn asked Slater if the officers could come in out of the rain and talk with him, and Slater invited them in. Fawcett and Kahn entered the motel room and explained they were looking for Hass and Neider. With Slater's permission, they checked the room to see if anyone else was present but did not find anyone. Slater, sitting on a bed, advised he did not know either man. At around the same time, Fawcett saw what appeared to be a small bag of marijuana in a dresser drawer that was open about six inches. After frisking and handcuffing Slater, the officers opened the drawer and, in addition to the marijuana, found approximately fifteen grams of crack cocaine, a box of Phillies Blunt cigars, and a digital scale.

A grand jury indicted Slater on July 31, 2002 and charged him with third-degree possession of a controlled dangerous substance (CDS) (*N.J.S.A.* 2C:35–10(a)(1)), second-degree possession of CDS with intent to distribute (*N.J.S.A.* 2C:35–5(b)(2)), and third-degree possession of CDS with intent to distribute within a school zone (*N.J.S.A.* 2C:35–5, –7).

Slater moved to suppress the evidence and argued that the warrantless search of the motel room was unlawful. After hearing testimony from Officers Fawcett and Kahn at a suppression hearing on September 3, 2004, the trial court denied Slater's motion. The court found that the officers' entry into the. motel

room was consensual, and that while in the room the officers inadvertently observed contraband in plain view.

Slater and the State reached a plea agreement afterward. Under the agreement, Slater was to plead guilty to second-degree possession with intent to distribute. In exchange, the State agreed to dismiss the remaining two counts and recommend a five-year prison sentence.

Slater pleaded guilty on December 31, 2004. Consistent with *Rule* 3:9–2, he acknowledged on the record, among other things, that he understood the terms of the plea agreement; waived his right to a trial; had not been forced or threatened to enter the plea; had not been promised anything else regarding the agreement; and was not under the influence of drugs or alcohol. Slater then provided a factual basis for the plea and admitted that at the time of his arrest, he was in possession of cocaine and was "going to sell or share some or a portion of that cocaine." He acknowledged that the quantity of cocaine was slightly less than fifteen grams.

An hour before the plea, Slater had expressed some dissatisfaction with his attorney. In response to questioning by the trial court during the plea hearing, Slater acknowledged that he had discussed and resolved those issues, that his attorney was able to answer his questions, and that he was satisfied with his lawyer's services. In accepting the plea, the court ruled there was a sufficient factual basis for it and found that Slater entered the plea knowingly, voluntarily, and without coercion. The court scheduled sentencing for February 4, 2005.

Twelve days after the plea hearing, on January 12, 2005, Slater filed a pro se motion for withdrawal of the guilty plea. He attached a handwritten letter to a four-page, pre-printed form set of motion papers, in which he requested to withdraw his guilty plea "for the following reasons: I had no control over the drugs that was found in motel room therefore I should not be punished." In addition, he moved pro se to suppress the evidence found in the room.

Slater's handwritten letter was attached to his presentence report, which was dated January 27, 2005. The offense section of the report recounted that Slater reportedly told police the motel room was rented by his brother-in-law, Tyrone Fowler, and that he was just visiting. Defendant's version of events in the presentence report declared that Slater denied culpability for the offense. He stated that his sister's boyfriend had brought him to the motel room "to chill." Slater reported that neither the cocaine nor the marijuana belonged to him and that he did not know that drugs were in the room. The presentence report noted that Slater wanted to retract his plea.

All parties appeared for sentencing on February 4, 2005. The trial court reviewed Slater's handwritten letter at the outset of the proceeding. Slater then told the court:

> That wasn't my room. I was visiting. I had no control [over the drugs]... No, it wasn't my motel room. It was LeShaun Washington's.
>
> . . . .
>
> ... [My attorney] had me thinking, well, I go to trial I'm going to lose. And I take the plea, I'll be going home, being that I got so much [jail credit] time in. And that's the only reason I did it. 'Cause I'm not guilty.

The trial court ruled that "changing your mind" did not provide a sufficient basis to withdraw a guilty plea and denied Slater's motion. As the court went on to deny Slater's renewed, pro se motion to suppress, Slater protested and repeatedly interrupted the proceedings, declaring "I would like to go to trial" and "[t] his is railroading."

The court followed the recommendation in the plea agreement and sentenced Slater to five years in prison. Slater was also ordered to pay various mandatory fines and penalties.

Slater appealed. He challenged the suppression ruling and argued that the trial court erred in denying the motion to withdraw his guilty plea. The Appellate Division rejected both claims. As to the latter issue, the panel agreed that Slater's "change of mind" provided no basis for withdrawal of his guilty plea under *State v. Smullen*, 118 *N.J.* 408, 416, 571 *A.*2d 1305 (1990).

We granted Slater's petition for certification limited to the plea withdrawal issue. 193 *N.J.* 275, 937 *A.*2d 977 (2007).

## II.

Slater argues that the trial court abused its discretion in denying his pre-sentence motion to withdraw his guilty plea, and that the Appellate Division erroneously affirmed that decision. He claims he did not know there were drugs in the motel room and was unaware that the room was registered in someone else's name. As a result, he submits that he is innocent of the charges. He contends that he was not advised of this potential defense and would not have pleaded guilty had he known of it. Slater also claims his attorney pressured him to plead guilty. Slater argues that because plea withdrawals should be liberally granted prior to sentencing, it was an abuse of discretion to deny his motion.

The State claims Slater freely chose to enter into a plea agreement and knowingly and voluntarily admitted his guilt in open court. The State argues that defendants have the burden of proving why they should be allowed to withdraw from a properly entered plea, and that Slater has not met that burden. Rather, the State argues that he changed his mind before sentencing. As a result, the State maintains the trial court did not abuse its discretion by refusing to allow Slater to withdraw his plea.

## III.

"[A] guilty plea is the final relinquishment of the most cherished right—to be presumed innocent of crime until a jury of one's peers has determined guilt beyond a reasonable doubt." *Smullen, supra,* 118 *N.J.* at 414, 571 *A.*2d 1305. Defendants who plead guilty also waive other guarantees like the right against self-incrimination and the right to confront one's accusers.

Because of the overriding importance of those protections, the court rules are designed to ensure that pleas are supported by a factual basis and are entered voluntarily and knowingly, that is,

with a full understanding of the charge and the consequences of the plea.

*Rule* 3:9–2 governs the taking of pleas and provides in relevant part:

> The court, in its discretion, may refuse to accept a plea of guilty and shall not accept such a plea without first questioning the defendant personally, under oath or by affirmation, and determining by inquiry of the defendant and others, in the court's discretion, that there is a factual basis for the plea and that the plea is made voluntarily, not as a result of any threats or of any promises or inducements not disclosed on the record, and with an understanding of the nature of the charge and the consequences of the plea.

By following that procedure, courts can be " 'satisfied from the lips of the defendant that he committed the acts which constitute the crime.' " *Smullen, supra,* 118 *N.J.* at 415, 571 *A.*2d 1305 (quoting *State v. Barboza,* 115 *N.J.* 415, 422, 558 *A.*2d 1303 (1989)).

Consideration of a plea withdrawal request can and should begin with proof that before accepting the plea, the trial court followed the dictates of *Rule* 3:9–2. *See Barboza, supra,* 115 *N.J.* at 419–20, 558 *A.*2d 1303 (noting in context of plea withdrawal motion that if plea was accepted without adequate factual basis, plea and sentence must be vacated). But the analysis cannot end there. To evaluate a plea withdrawal motion thoroughly and properly, other pertinent issues must be considered in the context of the specific facts of a case. Such a flexible approach will help ensure that justice is done in each case.

To begin with, a defendant's application to retract a plea must be considered in light of the competing interests of the State and the defendant. Our case law has long recognized the "important interest of finality to pleas." *Smullen, supra,* 118 *N.J.* at 416, 571 *A.*2d 1305. The State's strong interest in that regard "is in having criminal wrongdoers account and in the finality of that accounting." *State v. Taylor,* 80 *N.J.* 353, 365, 403 *A.*2d 889 (1979). The victims of an offense also have an obvious interest in the finality of criminal proceedings. At the same time, defendants are entitled to "fairness and protection of basic rights." *Ibid.*

To address those concerns, the court rules set forth two standards that are dependent on the time a plea withdrawal motion is made. Motions filed at or before the time of sentencing will be granted in the "interests of justice," *R.* 3:9–3(e); post-sentencing motions must meet a higher standard of "manifest injustice" to succeed, *R.* 3:21–1. The rules provide as follows:

> If at the time of sentencing the court determines that the interests of justice would not be served by effectuating the agreement reached by the prosecutor and defense counsel ..., the court may vacate the plea or the defendant shall be permitted to withdraw the plea.
>
> [*R.* 3:9–3(e).]
>
> A motion to withdraw a plea of guilty or non vult shall be made before sentencing, but the court may permit it to be made thereafter to correct a manifest injustice.
>
> [*R.* 3:21–1.]

Under either standard, a plea may only be set aside in the exercise of the court's discretion. *State v. Simon,* 161 *N.J.* 416, 444, 737 *A.*2d 1 (1999); *State v. Herman,* 47 *N.J.* 73, 76, 219 *A.*2d 413 (1966); *State v. Deutsch,* 34 *N.J.* 190, 197, 168 *A.*2d 12 (1961). Before sentencing, courts are to exercise their discretion liberally to allow plea withdrawals. *Smullen, supra,* 118 *N.J.* at 416, 571 *A.*2d 1305; *Taylor, supra,* 80 *N.J.* at 365, 403 *A.*2d 889; *Deutsch, supra,* 34 *N.J.* at 198, 168 *A.*2d 12. In a close case, the "scales should usually tip in favor of defendant." *Taylor, supra,* 80 *N.J.,* at 365, 403 *A.*2d 889. In contrast, after sentencing defendants must show their conviction was manifestly unjust in appealing to the court's broad discretion.

In all cases, to be sure, "the burden rests on the defendant, in the first instance, to present some plausible basis for his request, and his good faith in asserting a defense on the merits." *Smullen, supra,* 118 *N.J.* at 416, 571 *A.*2d 1305 (quoting *State v. Huntley,* 129 *N.J.Super.* 13, 17, 322 *A.*2d 177 (App.Div.1974)). That approach logically flows from the entry of a guilty plea because a defendant's representations and the trial court's findings during a plea hearing create a "formidable barrier" the defendant must overcome in any subsequent proceeding. *Blackledge v. Allison,* 431 *U.S.* 63, 74, 97 *S.Ct.* 1621, 1629, 52 *L.Ed.*2d

136, 147 (1977); *Simon, supra,* 161 *N.J.* at 444, 737 *A.*2d 1. Were it otherwise, trial judges "would automatically [be] require[d] ... to grant [plea withdrawal] motions, and [would be] strip[ped] ... of any discretion in the matter. Liberality in exercising discretion does not mean an abdication of all discretion." *Smullen, supra,* 118 *N.J.* at 416, 571 *A.*2d 1305 (quoting *Huntley, supra,* 129 *N.J.Super.* at 17, 322 *A.*2d 177).

In meeting their burden, defendants must show more than a change of heart. A "whimsical change of mind," by the defendant or the prosecutor, is not an adequate basis to set aside a plea. *Huntley, supra,* 129 *N.J.Super.* at 18, 322 *A.*2d 177; *see also Smullen, supra,* 118 *N.J.* at 417, 571 *A.*2d 1305.

We recognize that the above precepts, standing alone, do not always provide meaningful guidance in a particular case. For example, labeling a defendant's motion to retract a plea as a "change in mind" does not necessarily reveal much. All withdrawal motions, by definition, entail a change of mind. Some critical questions, then, are: why the change; what basis is there for defendant's new position; why was the issue not raised before; and what consequences would follow if relief were granted?

For the past half century, our case law has addressed those sometimes contradictory themes in the context of various scenarios in which defendants sought to withdraw their guilty pleas. *See, e.g., Smullen, supra,* 118 *N.J.* 408, 571 *A.*2d 1305; *Taylor, supra,* 80 *N.J.* 353, 403 *A.*2d 889; *State v. Nichols,* 71 *N.J.* 358, 365 *A.*2d 467 (1976); *Herman, supra,* 47 *N.J.* 73, 219 *A.*2d 413; *Deutsch, supra,* 34 *N.J.* 190, 168 *A.*2d 12. Although the cases involve different fact-sensitive situations, they draw on similar, overlapping considerations in deciding how to exercise a court's discretion and whether to permit relief. We now attempt to distill some common principles from that body of law in an effort to help trial courts assess plea withdrawal motions. We hold that trial judges are to consider and balance four factors in evaluating motions to withdraw a guilty plea: (1) whether the defendant has asserted a colorable claim of innocence; (2) the nature and

strength of defendant's reasons for withdrawal; (3) the existence of a plea bargain; and (4) whether withdrawal would result in unfair prejudice to the State or unfair advantage to the accused. *See United States v. Jones,* 336 *F.*3d 245, 252 (3d Cir.2002) (outlining factors to evaluate plea withdrawal motions under *Fed. R.Crim.P.* 32(e)).

The same factors are to be used for motions filed either before or after sentencing, but the timing of the motion will trigger different burdens of proof for the movant: pre-sentence motions to withdraw a plea are governed by the "interest of justice" standard in *Rule* 3:9–3(e), while post-sentence motions are subject to the "manifest injustice" standard in *Rule* 3:21–1. As a result, the weighing and balancing process will differ depending on when a motion is filed, as discussed further below.

We turn now to each of these factors and discuss them in greater depth:

(1) *Has the defendant asserted a colorable claim of innocence?* A core concern underlying motions to withdraw guilty pleas is to correct the injustice of depriving innocent people of their liberty. To that end, courts should consider whether a defendant has asserted his or her innocence.

██ A bare assertion of innocence is insufficient to justify withdrawal of a plea. Defendants must present specific, credible facts and, where possible, point to facts in the record that buttress their claim. *Jones, supra,* 336 *F.*3d at 252–53; *Huntley, supra,* 129 *N.J.Super.* at 18, 322 *A.*2d 177; *see also State v. Phillips,* 133 *N.J.Super.* 515, 519, 337 *A.*2d 627 (App.Div.1975) (explaining that "a protestation of innocence must be more than a mere assertion of nonguilt"; newly asserted defenses may invite skepticism if "factually unclothed").

██ When evaluating a defendant's claim of innocence, courts may look to

evidence that was available to the prosecutor and to the defendant through our discovery practices at the time the defendant entered the plea of guilt. In some

> cases, the proffered evidence may serve to rebut the assertion of innocence; in others, it may move a court to vacate the plea to the end that justice be done. [*Smullen, supra,* 118 *N.J.* at 418, 571 *A.*2d 1305.]

Courts are not to conduct a mini-trial at this juncture, though. They should simply consider whether a defendant's assertion of innocence is more than a blanket, bald statement and rests instead on particular, plausible facts.

(2) *What are the nature and strength of defendant's reasons for withdrawal?* This second factor focuses on the basic fairness of enforcing a guilty plea by asking whether defendant has presented fair and just reasons for withdrawal, and whether those reasons have any force. Our case law has identified a number of reasons that warrant withdrawal of a plea. Some examples follow: (1) the court and prosecutor misinformed the defendant about a material element of the plea negotiation, which the defendant relied on in entering his plea, *see Nichols, supra,* 71 *N.J.* at 361, 365 *A.*2d 467 (finding defendant misinformed about whether he would receive concurrent sentences if convicted); (2) the defendant was not informed and thus did not understand material terms and relevant consequences of the guilty plea, namely, the direct, penal consequences of the plea, *see State v. Johnson,* 182 *N.J.* 232, 241, 864 *A.*2d 400 (2005) (permitting plea withdrawal where defendant was unaware of period of extended parole ineligibility under No Early Release Act, *N.J.S.A.* 2C:43–7.2); *State v. Kiett,* 121 *N.J.* 483, 499, 582 *A.*2d 630 (1990) (allowing withdrawal where juvenile mistakenly believed he faced death penalty and entered guilty plea to avoid its imposition); *State v. Howard,* 110 *N.J.* 113, 118, 539 *A.*2d 1203 (1988) (allowing withdrawal where defendant was not informed of parole eligibility implications of sentence to Adult Diagnostic and Treatment Center); *but see State v. Heitzman,* 107 *N.J.* 603, 604, 527 *A.*2d 439 (1987) (finding failure to warn of collateral consequence of guilty plea—forfeiture of public employment—did not justify vacating plea); (3) defendant's reasonable expectations under the plea agreement were not met, *see State v. Kovack,* 91 *N.J.* 476, 483, 453 *A.*2d 521 (1982) (finding sentence improper where plea agreement did not contemplate period of parole ineligi-

bility); *State v. Marzolf,* 79 *N.J.* 167, 183, 398 *A.*2d 849 (1979) ("Where the accused's reasonable expectations are defeated, the plea bargain has failed one of its essential purposes, fairness, and a defendant should be permitted to withdraw the plea."); and (4) the defendant has not only made a plausible showing of a valid defense against the charges, but also credibly demonstrated why that defense "was forgotten or missed" at the time of the plea. *State v. Gonzalez,* 254 *N.J.Super.* 300, 303, 603 *A.*2d 516 (App.Div. 1992); *see also Simon, supra,* 161 *N.J.* at 444, 737 *A.*2d 1; *Smullen, supra,* 118 *N.J.* at 416, 571 *A.*2d 1305 (citing *Huntley, supra,* 129 *N.J.Super.* at 17, 322 *A.*2d 177).

Timing matters as to the strength of the reasons proffered in favor of withdrawal. As the standards in *Rules* 3:9–3(e) and 3:21–1 suggest, efforts to withdraw a plea after sentencing must be substantiated by strong, compelling reasons. By contrast, a lesser showing is required for motions raised before sentencing. Stated another way, a reason that would justify a post-sentencing withdrawal of a plea under our case law would certainly warrant relief pre-sentencing. In general, the longer the delay in raising a reason for withdrawal, or asserting one's innocence, the greater the level of scrutiny needed to evaluate the claim.

In assessing the nature and strength of the reasons for withdrawal, courts should not approach them with skepticism. At the same time, trial judges must act with "great care and realism" because defendants often have little to lose in challenging a guilty plea. *Taylor, supra,* 80 *N.J.* at 365, 403 *A.*2d 889. A court's ruling may rest, of course, on its view of the defendant's demeanor and candor at both the plea proceeding and any later hearing on the withdrawal motion.

(3) *Was the plea entered as part of a plea bargain?* Under our case law, defendants have a heavier burden in seeking to withdraw pleas entered as part of a plea bargain. *Smullen, supra,* 118 *N.J.* at 416–17, 571 *A.*2d 1305; *Huntley, supra,* 129

*N.J.Super.* at 18, 322 *A.*2d 177. Plea bargaining is a legitimate, accepted practice in the administration of criminal justice. *Taylor, supra,* 80 *N.J.* at 360–61, 403 *A.*2d 889. The system rests on the advantages both sides receive from it; and it depends on the good faith of both parties in carrying out the agreement struck—provided it is reasoned, fair, and approved by the trial court.

We recognize that the vast majority of criminal cases are resolved through plea bargains and do not suggest that this factor be given great weight in the balancing process.

(4) Would withdrawal *of the plea result in unfair prejudice to the State or unfair advantage to the accused?* There is no fixed formula to analyze the degree of unfair prejudice or advantage that should override withdrawal of a plea. Once again, courts must examine this factor by looking closely at the particulars of each case.

Certain facts readily demonstrate prejudice, such as the loss of or inability to locate a needed witness, a witness's faded memory on a contested point, or the loss or deterioration of key evidence. The critical inquiry in those and other situations is whether the passage of time has hampered the State's ability to present important evidence. In addition, courts may consider the State's efforts leading up to the plea and whether it is fair to require the State to repeat them. While the State is obligated to prepare all cases for trial, not all cases are alike. Extensive pre-trial preparation for a complex racketeering case, halted by a plea, might counsel against a plea withdrawal, whereas relatively minor preparation in a simple prosecution that involves few witnesses would not necessarily suggest prejudice.

Another important consideration is whether trial has begun. Once a jury has been chosen and sworn, and a plea interrupts the trial, withdrawal should only be permitted in the rarest of circumstances. This Court's cautionary language in *Herman* remains sound forty years later:

> If a defendant represented by counsel were permitted to withdraw a guilty plea which he voluntarily and knowingly entered after his trial had started, ... the efficient and orderly administration of justice would be impeded. Criminal calendars would become increasingly congested and the State's efforts to effectively prosecute lawbreakers would be seriously hampered by the delays. It is a difficult task at best for the State to assemble its witnesses and prepare its case for a trial on a specified date; it is neither fair nor just to compel the State to repeat this procedure as to the same defendant when the first trial is terminated by the defendant's own guilty plea given freely and understandingly.
>
> [*Herman, supra,* 47 *N.J.* at 78, 219 *A.2d* 413.]

██ The State is not required to show prejudice if a defendant fails to offer proof of other factors in support of the withdrawal of a plea. *Jones, supra,* 336 *F.*3d at 255. However, when there are colorable reasons for withdrawal, coupled with an appropriate assertion of innocence, "arguments against permitting withdrawal of a plea prior to sentencing weaken considerably" absent unfair prejudice or advantage. *Smullen, supra,* 118 *N.J.* at 417, 571 *A.*2d 1305 (referencing 2 *ABA Standards for Criminal Justice,* Standard 14–2.1(a) (1980)).

Trial courts should consider and balance all of the factors discussed above in assessing a motion for withdrawal of a plea. No factor is mandatory; if one is missing, that does not automatically disqualify or dictate relief.

### IV.

██ We now apply the above standard to the facts of this case. At the outset, we note there was an ample basis for the trial court's finding that Slater entered his guilty plea knowingly and voluntarily, pursuant to *Rule* 3:9–2. Slater's on-the-record statements during the plea colloquy also established an adequate factual basis for the plea. However, those facts do not end the inquiry. We turn next to the four-factor test outlined above.

As to the first factor, Slater unequivocally asserted his innocence. He claims that he was just visiting the motel room where the cocaine was found, that the room was registered to another person, and that he had no knowledge or control of the drugs.

Slater has presented specific, potentially plausible facts, and not simply a bald assertion.

With regard to the second factor, Slater's primary reason for attempting to withdraw the plea dovetails with his assertion of innocence: he claims his attorney did not advise him of the possible defense he now raises, and that he would not have pleaded guilty had he known of it. Slater advanced this claim in writing in a pro se motion he filed twelve days after the plea hearing. He reiterated the remarks in substance in connection with the preparation of the presentence report.

Slater's comments find support in the record. When the police went to Room 261 of the Millville Motor Inn, they were told they might find two white males there, not Slater. In addition, nothing in the record conflicts with Slater's account. On more than one occasion, Slater asserted that the motel room was not registered to him, a fact that seems readily susceptible of proof. Although the State is not obligated to offer any evidence at a motion to withdraw, it could have presented a motel record showing the room was registered to Slater—if that were the case—and thereby undermine the colorable nature of his claim of innocence. That said, we are not shifting the burden of justifying relief away from the defendant, where it belongs. Based on the facts here, Slater has provided a sufficiently strong reason to support his request for withdrawal.

Slater also claims that his attorney pressured him to plead guilty. He "had me thinking, . . . I'm going to lose [at trial]. And [if] I take the plea, I'll be going home, being that I got so much [jail credit] time in." This claim is at odds with Slater's express comment at the plea hearing that he was satisfied with his lawyer, with the language of the plea form Slater signed, and with his assurance to the trial court that no promises or threats had been made outside of the plea hearing. Slater was not offered a chance to substantiate the passing reference he voiced at sentencing, and did not volunteer additional information. At this time, there is no credible evidence in the record to support his comments. Nor is

there any proof that Slater's expectation of no additional jail time was reasonable under the circumstances, particularly in light of his five prior convictions for lesser offenses. Absent further proofs, this reason for withdrawal appears to lack strength. However, because we do not rely on Slater's alternate reason in resolving this appeal, it is not necessary to remand the matter to allow him a chance to add to the record. *See Deutsch, supra,* 34 *N.J.* at 196, 204, 168 *A.*2d 12 (granting leave to parties to supplement record, which contained only cursory testimony of defendant and no affidavits or documents).

With respect to factor three, Slater's plea of guilty was part of a plea bargain, a fact that weighs against him. For its part, the State agreed to dismiss two charges against Slater and recommend a minimum five-year sentence on the second-degree offense to which he pleaded guilty. In seeking to undo the plea agreement, the State points out that Slater acts at his peril. The State notes that Slater faces a possible extended twenty-year term and a parole disqualifier if he proceeds to trial and loses. Depending on the strength of Slater's possible defense, though, we cannot conclude that enforcing the plea agreement in this case outweighs other factors.

Finally, with respect to the fourth factor, the State has not articulated any prejudice beyond the ordinary trial preparation required of it. In the overall spectrum of cases, this one appears to be relatively straightforward. Police officers entered a motel room, spoke with Slater, its lone occupant at the time, and discovered an open drawer containing contraband. Two officers testified at the suppression hearing and would likely be called upon again, along with a drug expert, were the case to proceed to trial. Any prejudice to the State, which is properly measured as of the February 4, 2005 hearing date, therefore appears minimal. In addition, there is no suggestion that Slater would receive an unfair advantage from the withdrawal of his plea.

Slater's pre-sentence motion to withdraw his plea was rejected as a "change of mind" and went largely unexplored. On balancing

the above factors, we find that Slater has met his burden and is entitled to withdraw his guilty plea in the interests of justice. *See R.* 3:9–3(e).

## V.

For the reasons set forth above, the judgment of the Appellate Division is reversed, and the case is remanded for further proceedings.

*For reversal and remandment*—Chief Justice RABNER and Justices LONG, LaVECCHIA, ALBIN, WALLACE, RIVERA-SOTO and HOENS—7.

*Opposed*—None.