**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court."
Although it is posted on the internet, this opinion is binding only on the
parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3334-16T1

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

GREGORY KELLY,

    Defendant-Appellant.

           Submitted February 28, 2018 — Decided June 5, 2018

           Before Judges Alvarez and Currier.

           On appeal from Superior Court of New Jersey,
           Law Division, Passaic County, Indictment Nos.
           13-03-0186, 13-06-0604, and 13-11-1039.

           Joseph E. Krakora, Public Defender, attorney
           for appellant (Mark Zavotsky, Designated
           Counsel, on the brief).

           Camelia M. Valdes, Passaic County Prosecutor,
           attorney for respondent (Christopher W. Hsieh,
           Chief Assistant Prosecutor, of counsel and on
           the brief).

PER CURIAM

Defendant Gregory Kelly appeals from a March 7, 2017 Law Division order denying his petition for post-conviction relief (PCR). We affirm.

Defendant, who was extended-term-eligible under New Jersey's Three Strikes Law, N.J.S.A. 2C:43-7.1, was charged in three indictments. The first, No. 13-03-0186, related to events which occurred on October 24, 2012, in Clifton, and charged defendant with first-degree robbery, N.J.S.A. 2C:15-1(a)(1) and/or N.J.S.A. 2C:15-1(a)(2); third-degree possession of a weapon for unlawful purpose, namely, a six-inch steak knife, N.J.S.A. 2C:39-4(d); fourth-degree unlawful possession of a weapon, namely, a six-inch steak knife, N.J.S.A. 2C:39-5(d); fourth-degree resisting arrest, N.J.S.A. 2C:29-2(a)(2); and fourth-degree certain persons not to have weapons, namely, a six-inch steak knife, N.J.S.A. 2C:39-7(a). The second indictment, No. 13-06-0604, charged that while in Paterson on October 12, 2012, defendant committed a second-degree robbery, N.J.S.A. 2C:15-1(a)(1), and third-degree theft, N.J.S.A. 2C:20-3. Finally, defendant faced Indictment No. 13-11-1039, charging first-degree robbery upon M.A., in Paterson, while armed with a knife, and third-degree possession of a weapon for an unlawful purpose.

During defendant's plea colloquy as to the October 24 charge, he said the following:

Q    And you saw a woman getting into her car.

A    Right.

Q    And the woman that you saw getting into her car, she had an item that you wanted.

A    Yeah, a Louis Vuitton purse.

. . . .

Q    And you approached the woman.

A    Yes, I followed her around . . . the shopping area.

. . . .

Q    And when you approached her, you had an item in your hand.

A    I had a -- like a 6 inch steak knife.

Q    Okay and you understand that that 6 inch steak knife is a deadly weapon?

A    Yes Sir.

Q    And you approached her showing her that steak knife.

A    Yes.

Q    And it appeared to you that she saw that you had that steak knife in your hand.

A    Yes.

Q    And you grabbed her purse.

A    And I grabbed the purse and took off with it.

Q    Okay and the police arrested you?

3                                          A-3334-16T1

A     About 10 minutes later (indiscernible).

     Q     Okay.  And they caught you with the knife?

A     Yes they did.

     Q     And they caught you with her purse?

A     Yes.

     . . . .

     Q     She was . . . also with a small child that day, right?

A     I seen her in the . . . supermarket with the child.

     Q     She was putting her child in the car -- she was at her car when you approached her with the knife, right?

A     Yes.

     Q     And that's when you took the purse?

A     Well she -- the child was just about in the car seat and she turned around and I had the knife in my hand and she looked at me, I looked at her, I never said anything to her, she never said anything to me, but she seen the knife, and basically she just backed up and let me get the purse.

With regard to the October 5, 2012 robbery, defendant responded under oath to questioning:

     Q     . . . On October 5th of 2012, you committed another robbery.

A     I was in Paterson, I believe -- like Ellison (phonetic) Street in the parking lot area.

4

Q    Okay and you saw a woman in the parking lot area.

A    Right.

. . . .

Q    And she had something that you wanted also, right?

A    Yeah, she had . . . a Gap bag and I think . . . she had a Gap bag, I think she had another . . . designer bag, I'm not sure --

. . . .

Q    And you had -- and you approached this woman from behind.

A    Right.

Q    And you had something in your hand when you approached her from behind, right?

A    Yeah, I had a similar . . . steak knife.

Q    Was it the same knife as you used in a later robbery or a different knife?

A    It was . . . a similar one (indiscernible).

Q    Similar knife but different . . . actual knife.

A    Right.

Q    And you approached her.

A    I approached her from behind. I watched for a few minutes and then -- and I grabbed her -- when I . . . grabbed at . . . her purse, struggled with her a little bit and she like, fell back, I fell back and she fell down some

stairs and she wouldn't let the purse go, so
I end up holding her down.

. . . .

Q    And you showed her the knife on
purpose as a means to steal her property,
right?

A    Yes Sir.

. . . .

Q    . . . You put the knife to her neck
and demanded her purse, right or money?

A    It was . . . by her chest area --

Q    But --

A    -- not exactly her . . . neck, but her
chest area.

Q    Okay and she fought back?

A    Right.

Q    And you punched her in the face?

A    Yeah.

Q    And you . . . took her things?

A    Yes.

Defendant acknowledged robbing a woman who was older than he,

who "had a couple of designer purses" during the October 12

Paterson robbery.  He said:

A    I . . . grabbed her purse and I ended up
pulling her down a flight of stairs [be]cause
she wouldn't let . . . go.

6

Q   And you admit that by pulling her down the flight of stairs, you used physical force against her to try to steal her purse.

A   Yes.

Q   And in fact, you injured her.

A   Yeah, I believe she did get hurt.

. . . .

Q   Before you robbed her, she didn't have any injuries to her face.

A   Or . . . anywhere else (indiscernible).

Q   And you're satisfied after seeing the pictures that after you robbed her, that she was actually injured as a result of what you did, right?

A   Right.

During his colloquy with the judge, defendant acknowledged that his plea was entered knowingly, intelligently, and voluntarily, and that he was satisfied with the services of his attorney. He also acknowledged that his multiple prior convictions for violent offenses exposed him to the mandatory extended term for either of the first-degree robberies.

Defendant was represented by two attorneys. He rejected the State's initial plea offer of twenty years subject to the No Early Release Act (NERA), N.J.S.A. 2C:43-7.2, when represented by a first attorney. When represented by a second attorney, the State offered him a thirty-year plea deal, and he countered at twenty-

eight. Only by reaching out to the assistant prosecutor's supervisor was defendant's attorney able to obtain the twenty-eight-year offer.

In sentencing defendant, the court found aggravating factors two, three, six, nine, and twelve. N.J.S.A. 2C:44-1(a)(2), (3), (6), (9), and (12). The judge did not find any mitigating factors. See N.J.S.A. 2C:44-1(b). The judge commented that in light of the aggravating factors he found pertinent to the individual crimes and defendant's violent criminal history, had he been convicted at trial, there was no question he would have received a life sentence.

Defendant entered his guilty plea on April 21, 2015. Approximately two months later, he filed a motion to retract his guilty pleas on the first-degree robberies. In the application, he denied having possessed a knife during the Clifton robbery. The reason he denied possession was because the arresting officer's police report stated that the knife was recovered from his pants pocket shortly after the event, while another officer testified before the grand jury that the knife had been in defendant's coat pocket. Defendant denied being involved in the Ellison Street robbery at all, and alleged that the prosecutor pressured him into pleading guilty by threatening him with a life sentence. He also

asserted that his first attorney had failed to obtain an exculpatory videotape of the incident.

During arguments on the motion, defendant's second attorney said defendant did not wish to argue that he pressured him into pleading guilty or that he was ineffective, only that he was dissatisfied with his prior attorney. Additionally, the second attorney noted that there were no video cameras at the time and location the robbery occurred. Even if there had been, they would not have recorded the event because of their location.

After defendant's motion was denied, the judge sentenced him to the agreed-upon term of twenty-eight years in the aggregate on each first-degree robbery subject to NERA, concurrent, as well as to a concurrent term of ten years subject to NERA for the second-degree offense. Defendant did not file a direct appeal.

In his unsuccessful PCR application and now on appeal, defendant alleges that counsel was ineffective in that he coerced him to accept a plea by advising him that if he did not take the offer, he faced a life sentence. The PCR judge reviewed the Slater[1] factors, and concluded that defendant was not making a colorable claim of innocence, and thus could not withdraw. The judge further found that defendant's attorney's frankness with

---

[1] State v. Slater, 198 N.J. 145, 157 (2009).

regard to the sentencing consequences if defendant was convicted at trial, and the strength of the State's case, was not ineffective representation. Instead, it was a realistic presentation of defendant's circumstances; it would have been "ineffective for him to lie." The judge observed that this plea offer, in the face of overwhelming proofs, gave defendant some hope of release, whereas a life sentence obviously would not.

The judge found that the second attorney not only visited defendant, but thoroughly reviewed the discovery and went to the scene. By going to the scene, counsel learned there were no videos available. This defendant had an extensive criminal history and faced three separate charges of violent crimes. The State's proofs were overwhelming, and although defendant was dissatisfied, he was ultimately well-served by the plea agreement negotiated on his behalf.

On this appeal, defendant argues:

> POINT I
> DEFENDANT WAS DENIED THE EFFECTIVE ASSISTANCE OF COUNSEL ENTITLING HIM TO POST CONVICTION RELIEF
>
> (A) Counsel was ineffective for having coerced defendant to accept a plea by corroborating the prosecutor's communication that if defendant did not accept a plea he would spend the rest of his life in prison
> (B) The PCR court erred in its denial of defendant's claim he received

> ineffective assistance on his motion to
> vacate his plea

> POINT II
> DEFENDANT IS [ENTITLED] TO AN EVIDENTIARY
> HEARING ON HIS CLAIM THAT INITIAL TRIAL
> COUNSEL WAS INEFFECTIVE FOR FAILING TO MOVE
> TO DISMISS THE TWO FIRST DEGREE CHARGES OF
> ROBBERY CONTAINED IN THE INDICTMENTS

We find no merit to these arguments. R. 2:11-3(e)(2).

In order to obtain relief based on ineffective assistance of counsel grounds, a defendant is obliged to demonstrate not only that counsel's performance was deficient, but the manner in which the alleged deficiency prejudiced his right to a fair trial, Strickland v. Washington, 466 U.S. 668, 687 (1984); State v. Fritz, 105 N.J. 42, 58 (1987).

When an ineffective assistance of counsel claim is made by a defendant who entered a guilty plea, he or she must show that not only was the representation not "within the range of competence demanded of attorneys in criminal cases," but also that there was "a reasonable probability that, but for counsel's errors, [defendant] would not have pled guilty and would have insisted on going to trial." State v. DiFrisco, 137 N.J. 434, 457 (1994) (citations omitted).

The alleged deficiency in this case was defense counsel's honest assessment of defendant's position, conveyed to his client and conveyed by the prosecutor on the record. If convicted of

11

even one first-degree robbery, defendant would be sentenced to a mandatory term of life in prison. This was not a threat—it was an uncomfortable reality. Trial counsel's competence is demonstrated by the fact he conveyed that reality to his client.

On the merits, defendant could not meet the Slater test in support of his motion to withdraw the guilty pleas. Defendant fully and convincingly established a factual basis for the pleas, and volunteered details that made any subsequent claim of innocence incredible.

Defendant suggests his first attorney was incompetent because he did not seek dismissal of the first-degree robbery indictment based on the discrepancy in the location of the knife when defendant was arrested. He also contends his first attorney was ineffective because of his failure to obtain a video that did not exist. These points border on the frivolous and do not warrant further discussion in a written opinion. R. 2:11-3(e)(2).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION