**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2215-17T4

STATE OF NEW JERSEY,

     Plaintiff-Respondent,

v.

JOSE CASTILLO, a/k/a
JORGE CASTILLO,

     Defendant-Appellant.

_____

Submitted May 2, 2019 – Decided June 4, 2019

Before Judges Simonelli and Firko.

On appeal from Superior Court of New Jersey, Law Division, Union County, Indictment No. 95-02-0122.

Joseph E. Krakora, Public Defender, attorney for appellant (Monique Moyse, Designated Counsel, on the brief).

Jennifer Davenport, Acting Union County Prosecutor, attorney for respondent (Meredith L. Balo, Special Deputy Attorney General/Acting Assistant Prosecutor, of counsel and on the brief).

PER CURIAM

Defendant Jose Castillo appeals from a December 12, 2017 order denying his motion to withdraw his guilty plea to first-degree possession of a controlled dangerous substance (CDS) with intent to distribute, N.J.S.A. 2C:35-5(a)(1), and third-degree possession of a CDS with intent to distribute in a school zone, N.J.S.A. 2C:35-7, prior to sentencing.  On appeal, defendant raises the following points for our consideration:

> POINT ONE
>
> [DEFENDANT] IS ENTITLED TO A REMAND BECAUSE THE TRIAL COURT USED THE WRONG STANDARD WHEN RULING ON HIS MOTION TO WITHDRAW THE PLEA.
>
> POINT TWO
>
> [DEFENDANT] IS ENTITLED TO WITHDRAW THE PLEA PURSUANT TO STATE V. SLATER, 198 N.J. 145 (2009).
>
> > A.    DEFENDANT ASSERTED A COLORABLE CLAIM OF INNOCENCE.
> >
> > B.    THE NATURE AND STRENGTH OF DEFENDANT'S REASONS FOR WITHDRAWAL ARE COMPELLING.
> >
> > C.    THE EXISTENCE OF A PLEA BARGAIN DOES NOT MEAN DEFENDANT'S MOTION SHOULD NOT HAVE BEEN GRANTED.

D. WITHDRAWAL WOULD NOT RESULT IN UNFAIR PREJUDICE TO THE STATE OR UNFAIR ADVANTAGE TO DEFENDANT.

E. TRIAL COURT'S FINDINGS ARE UNSUPPORTABLE AND THE ORDER DENYING THE MOTION MUST BE REVERSED.

For the reasons that follow, we affirm.

I.

We derive the following facts from the record. In February 1995, a grand jury indicted defendant for third-degree possession of a CDS in violation of N.J.S.A. 2C:35-10(a)(1) (count one); first-degree possession of a CDS with intent to distribute in violation of N.J.S.A. 2C:35-5(a)(1) and N.J.S.A. 2C:35-5(b)(1) (count two); and third-degree possession of a CDS with intent to distribute within 1000 feet of school property in violation of N.J.S.A. 2C:35-7 (count three).

On August 7, 1995, plea forms were completed when the matter was assigned to Judge Edward Toy, but the plea hearing took place on August 21, 1995, before Judge Walter R. Barisonek. At the plea hearing, defendant pled guilty to counts two and three of the indictment in exchange for a dismissal of count one. The State agreed to recommend a ten-year sentence with a three-

and-one-half year stipulated period of parole ineligibility. The plea forms provided State v. Subin[1] applied, and if defendant failed to appear at the sentencing hearing, the court was not bound to the plea agreement terms.[2] Defendant was continued on bail until his sentencing hearing, which was scheduled for October 13, 1995. Defendant failed to appear for sentencing, and Judge Barisonek issued a bench warrant for his arrest, which was not executed until August 10, 2016.

Defendant filed a sentencing memorandum before Judge Scott J. Moynihan stressing health concerns (a stroke in May 2016 and gallbladder problems), and seeking a non-custodial sentence because he was "in too poor health to go to prison." Notwithstanding defendant's request for leniency, on September 24, 2017, he moved to withdraw his guilty plea, claiming he never pled guilty in this matter, never signed the plea forms, was not the person who appeared before Judge Barisonek to enter the plea, and was not interviewed by the probation department relative to his pre-sentence report.

---

[1] 222 N.J. Super. 227, 238-39 (App. Div. 1988).

[2] The 1995 court transcripts are no longer available due to the passage of time. The factual basis of the pleas was reconstructed from notes taken on August 21, 1995.

On October 27, 2017, Judge Lisa Miralles Walsh heard defendant's motion and considered the testimony of defendant and his former counsel, Thomas Betancourt, Esq., during an evidentiary hearing. Defendant testified as follows:

Q. Mr. Castillo, do you recall having had an open criminal case against you in Union County around the time frame of 1995?

A. Yes.

Q. Okay. Do you recall what the charges were against you?

A. Not exactly, not at this particular time.

Q. Do you recall . . . having been arrested with another individual?

A. Yes.

Q. Okay. And what kind of case was it, what was it about?

A. Drugs.

Q. Okay. Now, at some point did you hire an attorney to represent you?

A. Yes.

Q. Do you recall the name of that attorney?

A. Not right now.

Q. Do you recall where that attorney's offices were located?

5

A.     Yes. I[t] was around the place the location where I used to live at that time, Clifton, New Jersey. And the attorney was from that area.

Q.     In what language did you communicate with that attorney?

A.     That attorney only spoke English, but I had a friend who was the one who interpreted for me every time I went to see that attorney.

Q.     Okay. Did that attorney that you hired represent you in court proceedings?

A.     Yes.

Q.     Do you recall how many times you went to court?

A.     No. No, I do not because it's been like, what, [twenty-two, twenty-three] years and I don't recall that far back.

Q.     Would it be more than [three] times or less than [three] times, for example? If you can't recall, that's fine.

A.     Yes, more than [two] or [three] times.

Q.     Okay. Was there a time that you stopped going to court?

A.     Correct.

Q.     And can you explain why that was?

A.     Yes. There was a time in which I went to that courthouse and the hearing had been cancelled. At one

6

point they called the [co-]defendant[3] failed to appear. And then another time they called [co-]defendant did not appear also. And it was then that the sister-in-law told me that that person was not going to appear and that he was going to place all the blame on me.

Q.    So when you found out or when you believed that he was going to place all the blame on you, how did that make you feel?

A.    Well, because at that particular time I felt bad. I felt betrayed. I had [three] or [four] children at the time and I was afraid. And that's how come I stopped appearing. I didn't show up any more.

Q.    At any point in time, Mr. Castillo, did you appear in court to enter a guilty plea to charges with regard to this case?

A.    No.

Q.    You do realize that the [c]ourt has in its system that Jose Castillo pled guilty in this case?

A.    No, not really. I never did declare myself guilty. I have always kept saying the same thing from the beginning.

On cross-examination, defendant confirmed he was arrested in 1994 and again in summer of 2016. He met with his attorney in 1994 and 1995 "several times," and defendant was "out on bail." Defendant reiterated his co-defendant "was going to put all the blame on [him]" and defendant never showed up again

---

3  The co-defendant is identified as Waldo Torres in the record.

A-2215-17T4

in court.  Defendant also admitted to moving to Clifton in July 1990; stated he was the youngest of eight children; provided the identities of his parents and siblings; and provided his employment and immigration documents.  Defendant lived with his wife Ida in 1995, and conceded on cross-examination that the three children he testified about on direct were Ida's daughters, not his.  He confirmed his date of birth on the plea form, which was shown to him.

Mr. Betancourt testified at the hearing as follows:

Q.    Can you please tell us what you do?

A.    Presently?

Q.    Yes.

A.    I'm an administrative law judge and I sit in Newark.

Q.    Can you tell us what you did in 1994?

A.    I was an attorney practicing out of (indiscernible).

Q.    And as part of your practice did you do any criminal (indiscernible)?

A.    Yes.

Q.    Do you recall if you ever defended a man by the name of Jose Castillo?

A.    I do now.  (Indiscernible) paperwork in that file.

Q.    And I'm going to approach with what's been marked S-2[4] and S-3.[5]  Let's start first with S-2.  Can you take a look at that and tell me if you recognize it?

A.    Yes.  It's a letter from my law firm from me to Judge Toy.

Q    And what is that letter regarding?

A.    Jose Castillo, regarding indictment number 95-02-00122.

Q.    And did you write that letter?

A.    I did.

Q.    And how do you know that you wrote that letter?

A.    It's my scribbled signature.

Q.    And what was this letter regarding?

A.    I was filing a brief in support of a motion to suppress.

Q.    And do you recall at the motion to suppress that there was a hearing?

A.    I do.  Actually, for reasons unrelated to Mr. Castillo, I do recall arguing this motion in front of Judge [Barisonek].

---

[4]  Mr. Betancourt identified S-2 as a letter and brief he sent to Judge Toy on April 19, 1995, on behalf of defendant.

[5]  Mr. Betancourt identified S-3 as a letter dated August 22, 1995, which he sent to Judge Barisonek seeking bail pending appeal and thanking the court for staying defendant's sentence.

A-2215-17T4

Q.     And do you recall how many times you appeared in court on this matter?

A.     I do not.  My only recollection would actually be there was on the motion to suppress.

Q.     Okay.  And do you have a recollection of that motion, do you recall who it was before?

A.     Judge [Barisonek].

Q.     And was your client with you at that time?

A.     I believe so, but I'm not positive.

Q.     And did you appear for Mr. Castillo for other matters besides just -- that are on this matter on other occasions besides just the motion?

A.     I don't have an independent recollection of coming here other than on a motion, so I mean I represented him.

Q.     Do you recall if in the brief for the motion, Mr. Castillo's version of events as put forth?

A.     On the brief.  Is that your question?  I read the brief after you sent it to me (indiscernible).  It was addressing the search as being unjustified.  My recollection was (indiscernible) on a tip.  They searched the trunk of his vehicle and found (indiscernible).

Q.     Do you recall if you spoke to Mr. Castillo about what happened while writing the brief if you recall?

A.     I don't recall.

A-2215-17T4

Q.	At the time this brief was written in 1995, how long had you been an attorney?

A.	I was admitted in [19]83, so [twelve] years.

Q.	And was it your practice to meet with clients?

A.	Oh, absolutely.

Q.	And was it your practice at the time to appear for any status conferences or other court appearances they might have?

A.	Oh, sure.

Q.	And did you know your clients?

A.	Prior to being retained?

Q.	No. Once you were representing them, did you know them?

A.	Oh, sure, sure.

Q.	Would you be able to recognize them?

A.	(Indiscernible).

Q.	And I'm going to show you D-1. Let me show you what's been previously marked D-1. Can you take a look at D-1 and tell me if you recognize it?

A.	It's a plea form. There is my signature.

Q.	On what pages does it bear your signature?

A.	On the third page and on the fourth page.

11

Q.     Is there anyone else's signature on there?

A.     There's the prosecutor's signature and Mr. Castillo's signature.

Q.     And in 1995 would you have been able to recognize Mr. Castillo?

A.     Certainly.

Q.     I'm going to approach with what's been marked S-3 for identification.  Can you take a look at S-3 and tell me if you recognize that?

A.     The letter that I wrote to Judge [Barisonek] regarding Mr. Castillo.  It's regarding a stay of sentence.

Q.     And what is the date on that letter?

A.     August 22[], 1995.

Q.     And I'll actually take that back.  Finally, I'm going to approach with what's been -- well, S-1 in evidence.  Can you take a look at S-1 and tell me if you recognize that?

A.     It's a pre-sentence report for Mr. Castillo.

Q.     And does that pre-sentence report indicate Mr. Castillo's attorney at the time?

A.     I'm sure it does.

Q.     I can draw your attention to the bottom --

A.     That's my office –

12

. . . .

Q.    Would you have ever allowed someone who's not your client to enter a guilty plea for someone else?

A.    Never.

Betancourt testified his office was located in Hackensack in 1995, and he was arguing a motion to suppress on defendant's behalf.[6]

On November 1, 2017, Judge Walsh rendered an oral decision on defendant's motion and concluded:

> While this [c]ourt is aware that . . . defendant claimed he did not enter the guilty plea, this claim is not supported by evidence provided to this [c]ourt. Furthermore, this [c]ourt did not find the testimony of . . . defendant to be credible. Defendant has an interest in the outcome of this motion.
>
> The [c]ourt felt that he was testifying with an intent to deceive the [c]ourt in a last ditch effort to avoid State prison. Conversely, the [c]ourt finds that Mr. Betancourt testified credibly. While Mr. Betancourt did not have a specific recollection of the 1995 plea, he did remember the motion to suppress. He did indicate that it was his practice to meet with clients at his office in order to prepare his case.
>
> Mr. Betancourt stated that he would have known defendant and that he would not have allowed someone else to take the plea. In addition, it is clear that Mr. Betancourt's signature appears on the plea form,

---

[6] The Promis/Gavel record revealed Betancourt appeared in these proceedings and his name is listed on defendant's pre-sentence report.

13

showing that he in fact was present in 1995 when the plea was taken.

As far as the corrections made to the plea form, it appears that Judge Toy was set to take this plea on August 7[], 1995. And that the plea was then moved to Judge [Barisonek]. And I believe that Mr. Betancourt also indicated that he recalled having the case go back to Judge [Barisonek] for the plea. And that occurred on August 21[], 1995.

There's no doubt that there is an application on that date to have . . . defendant not go into custody on this charge. This [c]ourt finds that it defies logic that someone else would have put themself in the position to go to jail for a defendant -- for this defendant on that date. As a result, this [c]ourt finds for all of the reasons that I have just mentioned that there is no colorable claim of innocence here.

　　. . . .

And this all comes from State v. Slater.[7] Efforts to withdraw the plea after sentencing must be substantiated by strong compelling reasons. By contrast, a lesser showing is required for motions raised before sentencing as we have here. That's Slater[, 198 N.J.] at 150.

As I stated previously, this [c]ourt is not persuaded with defendant's contention that defendant failed to appear for a court date he was scheduled for and in his absence someone else came in pretending to be him. This unknown person then entered into a guilty plea with the defendant's own counsel, Judge [Barisonek], and other

---

7  198 N.J. 145 (2009).

court personnel without any of them taking notice that this man was not in fact Jose Castillo.

Further, also the defense states that the element of timing militates in defendant's favor because he has not yet been sentenced, warranting a lower level of scrutiny, this [c]ourt still finds that there is no basis for . . . this defendant to take his plea back.

The State is proper in asserting that . . . defendant has been a fugitive for over [twenty] years, which created this large gap in time. As such, defendant should not benefit from a gap in time that he created himself.

This appeal followed.

II.

We review a trial judge's decision on a motion to withdraw a guilty plea for abuse of discretion, State v. Munroe, 210 N.J. 429, 441-42 (2012), and will only overturn a judge's decision if it was clearly erroneous. State v. O'Donnell, 435 N.J. Super. 351, 372 (App. Div. 2014). An abuse of discretion "arises when a decision is 'made without a rational explanation, inexplicably departed from established policies, or rested on an impermissible basis.'" Flagg v. Essex Cty. Prosecutor, 171 N.J. 561, 571 (2002) (quoting Achacoso-Sanchez v. Immigration & Naturalization Serv., 779 F.2d 1260, 1265 (7th Cir. 1985)).

Before sentencing, the standard for plea withdrawal is "the interests of justice[.]" R. 3:9-3(e). After sentencing, the standard is "to correct a manifest

injustice." R. 3:21-1.  Our Supreme Court outlined a framework to assess claims

to withdraw a plea in Slater:

> In evaluating motions to withdraw a guilty plea, trial courts should consider the following factors: (1) whether the defendant has asserted a colorable claim of innocence; (2) the nature and strength of defendant's reasons for withdrawal; (3) the existence of a plea bargain; and (4) whether withdrawal would result in unfair prejudice to the State or unfair advantage to the accused.
>
> [198 N.J. at 150.]

We are satisfied Judge Walsh applied the proper standard under Slater.

This is evidenced by the judge stating:  "Efforts to withdraw the plea after

sentencing must be substantiated by strong[,] compelling reasons.  By contrast,

a lesser showing is required for motions raised before sentencing as we have

here."  As to the first Slater factor, defendant asserted his innocence over twenty

years after entering a guilty plea, according to Betancourt's testimony, which

Judge Walsh found credible.  We reject defendant's argument that his "not

guilty" plea at the time of his arraignment serves as a colorable claim of

innocence because he failed to "present specific, credible facts and, where

possible, point to facts in the record that buttress [his] claim."  Id. at 158.

As to the second Slater factor, we see no support for defendant's insistence

that his reasons for withdrawing his plea are compelling.  The judge was "not

16

persuaded by defendant's claim that he was not the person who had entered the guilty plea[,]" and she found the signature on the plea form appeared "nearly identical" to the signature on letters attributable to defendant. Although conceding she is not a handwriting expert, the judge observed the differences in the handwriting such as a "slight hook in the J, as well as a slight hook in the C of Jose and of Castillo" on the plea form. These slight discrepancies "could be explained by the passage of over [twenty] years[,]" or due to defendant's stroke. The judge aptly found only defendant would have known the specifics of his family history contained in the pre-sentence report.

Next, defendant argues the court abused its discretion by finding he was the individual who in fact entered the guilty plea, and the plea was not entered by an imposter, because "the other three Slater factors weigh so heavily" in defendant's favor. In Slater, our Court noted "defendants have a heavier burden in seeking to withdraw pleas entered as part of a plea bargain[,]" but the Court did "not suggest that this factor be given great weight in the balancing process." Id. at 160-61. The proofs support the judge's conclusion that "it defies logic that someone else would have put [themselves] in the position to go to jail for a defendant[.]"

Finally, we agree with the trial judge that defendant failed to show any justifiable reasons to withdraw his guilty plea. He delayed filing the motion and attempted to persuade the court to sentence him to a non-prison sentence after providing his medical records. As aptly noted in Judge Walsh's decision, defendant should not benefit from being a fugitive for two decades. Moreover, without the plea agreement, defendant faced twenty-five years imprisonment. The Slater Court stated, "[p]lea bargaining is a legitimate, accepted practice in the administration of criminal justice." Id. at 161.

After balancing all four of the Slater factors, we determine defendant has not met his burden of substantiating his request with "strong, compelling reasons." Id. at 160. Defendant has not shown that the denial of his motion was manifestly unjust, overcoming the "formidable barrier" created by the acceptance of his guilty plea. Id. at 156 (quoting Blackledge v. Allison, 431 U.S. 63, 74 (1977)).

We deem the balance of defendant's arguments to be without sufficient merit to warrant discussion in this decision. R. 2:11-3(e)(2).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

18                                                                    A-2215-17T4