**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court."
Although it is posted on the internet, this opinion is binding only on the
parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0311-16T3

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

KATHLEEN M. DORSETT,

    Defendant-Appellant.

_____

Submitted April 24, 2018 — Decided June 7, 2018

Before Judges Yannotti and DeAlmeida.

On appeal from Superior Court of New Jersey,
Law Division, Monmouth County, Indictment No.
11-01-0207.

Joseph E. Krakora, Public Defender, attorney
for appellant (Gilbert G. Miller, Designated
Counsel, on the brief).

Christopher J. Gramiccioni, Monmouth County
Prosecutor, attorney for respondent (Mary R.
Juliano, Assistant Prosecutor, of counsel and
on the brief).

PER CURIAM

Defendant Kathleen M. Dorsett appeals from an order entered

by the Law Division on July 19, 2016, which denied her petition

for post-conviction relief (PCR) and her motion to withdraw her plea. We affirm.

I.

Defendant, her father Thomas Dorsett (T. Dorsett), her mother Lesley Dorsett (L. Dorsett), and Anthony Morris (Morris) were charged with various offenses under Monmouth County Indictment No. 11-01-0207:

> count one: first-degree conspiracy to murder Stephen Moore (Moore), N.J.S.A. 2C:5-2 and N.J.S.A. 2C:11-3 (defendant and T. Dorsett);
>
> count two: first-degree murder of Moore, N.J.S.A. 2C:11-3 (defendant and T. Dorsett);
>
> count three: fourth-degree tampering with physical evidence, N.J.S.A. 2C:28-6(1) (defendant, T. Dorsett, and L. Dorsett);
>
> count four and five: fourth-degree tampering with physical evidence, N.J.S.A. 2C:28-6(1) (defendant, T. Dorsett, and Morris);
>
> count six: second-degree conspiracy to commit aggravated arson, N.J.S.A. 2C:5-2, N.J.S.A. 2C:17-1(a)(2) (T. Dorsett and Morris);
>
> count seven: first-degree arson for hire, N.J.S.A. 2C:17-1(d) (T. Dorsett and Morris);
>
> count eight: second-degree conspiracy to desecrate human remains, N.J.S.A. 2C:5-2 and N.J.S.A. 2C:22-1(a) (defendant, T. Dorsett, and Morris);
>
> count nine: second-degree desecration of human remains, N.J.S.A. 2C:22-1(a) (defendant, T. Dorsett, and Morris);

count ten: third-degree tampering with a witness or informant, N.J.S.A. 2C:28-5(a) (T. Dorsett);

count eleven: third-degree conspiracy to commit financial facilitation of criminal activity, N.J.S.A. 2C:5-2 and N.J.S.A. 2C:21-25(e)(3) (defendant, T. Dorsett, and L. Dorsett);

count twelve: third-degree financial facilitation of criminal activity, N.J.S.A. 2C:21-25(e)(3) (defendant, T. Dorsett, and L. Dorsett);

count thirteen: first-degree conspiracy to murder [E.M.], N.J.S.A. 2C:5-2 and N.J.S.A. 2C:11-3 (defendant and L. Dorsett);

count fourteen: first-degree attempted murder of [E.M.], N.J.S.A. 2C:5-1 and N.J.S.A. 2C:11-3 (defendant and L. Dorsett).[1]

On May 9, 2013, defendant pled guilty to counts two (murder), eight (conspiracy to desecrate human remains), and fourteen (attempted murder). The State agreed to recommend a sentence of thirty years of incarceration, with thirty years of parole ineligibility, on count two; a consecutive term of eight years on count eight; and a consecutive term of twenty years on count fourteen, with an eighty-five percent parole bar pursuant to the No Early Release Act (NERA), N.J.S.A. 2C:43-7.2. The State also agreed to dismiss the remaining charges.

---

[1] In this opinion, we use initials to identify certain individuals, in order to protect their identities.

A-0311-16T3

At the plea hearing, defendant testified that she was guilty of these offenses and was pleading guilty of her own free will. She stated that no one had forced or threatened her, that her attorney had explained the charges and plea forms to her and answered all of her questions, and that she understood the charges and was satisfied with counsel's representation. She also testified that before accepting the plea offer, she had reviewed the discovery with her attorney and discussed the possible defenses and the likelihood of conviction, and that those discussions led her to accept the plea offer.

The judge reviewed defendant's sentencing exposure on the charges and the State plea offer. Defendant said she understood both. She denied that any promises or representations had been made to get her to plead guilty, and she testified that she wanted the court to accept the plea as described. The judge explained that defendant did not have to plead guilty and she was entitled to a trial in which the State would have to prove each and every element of the charged offenses beyond a reasonable doubt. Defendant testified that she understood but still wished to plead guilty.

Defendant then read the following prepared statement into the record to establish the factual basis for her plea:

On August 16, 2010, at approximately 7:30 a.m., [Moore] came to my residence . . . for a scheduled drop-off of our infant daughter. Approximately [thirty] minutes prior to [Moore's] arrival he texted me that he was on his way.

When he arrived, I told [Moore] to get his tools in the backyard of the driveway. After [Moore] was convinced to retrieve his tools, I took my daughter into my house, knowing all the time my father [T. Dorsett] was back there waiting to kill him.

As I was changing [my daughter's] diaper, I heard screaming coming from the driveway. By the time I secured my child and ran outside, [Moore] was in the driveway, lying in the driveway.

I sat down next to him in order to shield him from view of my next-door neighbor, [J.C.], who was yelling out her window, asking me what was wrong. I repeated several times to [J.C.] that everything was all right, and that she should shut her window. . . .

After my conversation with [J.C.] concluded, I assisted my father with lifting [Moore's] body into the trunk of my ex-mother-in-law's vehicle. My father drove off with the car. And shortly thereafter he telephoned me to meet him at [a restaurant] in Long Branch. I met him there and then followed him to another location in Long Branch where the vehicle with [Moore's] dead body in it was abandoned. I then drove my father home.

After we arrived at my residence, we cleaned up the area where [Moore] was killed, and my father drove away with the cleaned-up items. . . . I know now that he disposed of everything in the dumpster at [the restaurant].

The judge questioned defendant to confirm that she had stated that she went into the backyard "knowing that [her] father was there waiting to kill him." Defendant responded, "yes" when the judge asked her if "this [was] something [she] knew was going to happen, and it was [her] job to get him into the backyard."

Defendant then continued reading her prepared statement:

> During late December 2010, and early January 2011, I had numerous conversations with [A.A.], an inmate at [the county jail]. In my conversations, I discussed with [A.A.] her assistance in finding someone to kill my ex-mother-in-law, [E.M.]. I wanted my [ex]-mother-in-law killed so she could not have anything to say about my plea negotiations involving [Moore].
>
> [A.A.] told me she could find someone to kill [E.M.] for me. And then I contacted my mother [L. Dorsett] via the phone from the jail and told her to meet the hit man and give him $1,000 as a deposit, and a picture and address for [E.M.] for the purpose of having her killed. I later learned that the hit man was an undercover police officer.

In response to the assistant prosecutor's questions, defendant admitted she wrote a letter to her mother instructing her how to kill E.M. She told her mother she wanted the death to look "natural" and related to "some type of diabetic issue."

On May 9, 2013, T. Dorsett pled guilty to counts two (murder) and seven (arson for hire). On that same day, L. Dorsett pled guilty to count thirteen (conspiracy to commit murder).

On August 8, 2013, the court sentenced defendant in accordance with her plea. The court imposed an aggregate prison term of fifty-eight years, with a forty-seven-year period of parole ineligibility. T. Dorsett was sentenced to an aggregate term of forty-five years in jail, with a thirty-year parole bar, and L. Dorsett was sentenced to a seven-year prison term, with an eighty-five-percent period of parole ineligibility, pursuant to NERA.

Defendant appealed from the final judgment of conviction and challenged her sentence. The appeal was heard on our excessive sentence oral argument calendar. R. 2:9-11. We entered an order affirming the sentence. State v. Dorsett, No. A-2224-13 (App. Div. April 7, 2014).

Thereafter, defendant filed a pro se petition for PCR. She withdrew her petition, and the court entered an order dismissing the petition without prejudice. Later, defendant filed a pro se PCR petition dated June 12, 2015, in which she alleged she did not receive the effective assistance of trial or appellate counsel. She also sought to withdraw her guilty plea. Defendant sought an evidentiary hearing.

Defendant alleged her trial attorney misled her when advising her whether to accept the State's plea offer by stating that her mother would be sentenced to twenty years in jail unless defendant pleaded guilty. Defendant claimed her attorney "continually

vacillated" between advising her to accept or reject the plea offer, leaving her "with no clear guidance about her best course of action."

Defendant further alleged that as a result of her trial attorney's actions, her plea was obtained by fraud, misrepresentation, and possibly coercion, thereby rendering the plea unknowing and involuntary. She also alleged her trial attorney was ineffective because he failed to seek a change of venue, and that appellate counsel was ineffective because counsel failed to raise on direct appeal a claim regarding the trial court's decision to consolidate various counts in the indictment involving her co-defendants.

The court appointed PCR counsel for defendant. Defendant's PCR counsel filed a memorandum of law in support of the petition, and a certification by defendant, dated May 12, 2016. In her certification, defendant asserted that her trial attorney "demanded" that she plead guilty knowing that she had a "fragile state of mind."

She claimed her attorney told her she could not win the case, and a trial could put her mother in jail for the rest of her life. She also asserted that she "fell into a deep depression" after her attorney told her that no matter what course she took, her child would be taken from her "forever." She alleged she felt "powerless,

8                                                                A-0311-16T3

helpless and eager to end everything" and that knowing this, her attorney "coerced [her]" to accept the plea offer.

T. Dorsett provided a certification, dated April 2, 2016. He asserted that on August 11, 2010, Moore came to the rear of his daughter's home to drop off his granddaughter. T. Dorsett stated that he got into an argument with Moore, and accused him of sexually abusing his granddaughter. They began to fight and Moore "fell on a pile of metal junk" and he landed on top of him.

T. Dorsett said Moore hit his head. T. Dorsett claimed he "panicked and tried to cover-up the results of the fight." He also said defendant "was not involved in the fight" and he did not discuss with her that he was going to injure or kill Moore. He stated that he did not believe defendant was culpable in Moore's death.

The PCR judge heard oral argument on July 19, 2016, and placed a lengthy decision on the record. The judge rejected defendant's claim that she did not provide an adequate factual basis for her plea because she did not hold the weapon or strike Moore. The judge explained that defendant pled guilty to murder as an accomplice. The judge found that based on the statement defendant provided at the plea hearing, it was fair to infer that her purpose, which she shared with her father, was to cause Moore's death.

The judge also considered whether defendant should be allowed to withdraw her plea. The judge addressed the factors enumerated in State v. Slater, 198 N.J. 145, 154-55 (2009). The judge determined that defendant had not asserted a colorable claim of innocence. The judge found defendant's statement that she did not kill Moore did not absolve her of accomplice liability for the murder.

Moreover, the judge found that T. Dorsett's certification was not credible, since it was inconsistent with the statements defendant made at her plea hearing and her statements during her presentence interview. T. Dorsett's statements in the certification also were inconsistent with statements he made at his own plea hearing, where he said he instigated the argument with Moore and struck him in the head with a cable with the purpose and intent of causing his death.

The PCR judge also found that defendant's claim that she was pressured or coerced to enter a guilty plea was belied by her sworn testimony at the plea hearing. The judge found that the fact that her attorney advised her of the potential consequences of proceeding to trial, including the consequences to members of her family, did not render the plea involuntary.

The judge also noted that the plea was entered pursuant to a plea agreement, which weighed against allowing defendant to

withdraw the plea. In addition, the judge found that defendant would receive an unfair advantage if permitted to withdraw her plea because her mother was scheduled to complete her sentence in December 2016, and would have received the benefit from defendant's plea bargain. The State also would be prejudiced because Morris, who set the car containing Moore's body on fire, had completed his sentence and no longer had an incentive to cooperate in the prosecution of defendant.

In addition, the judge rejected defendant's claims of ineffective assistance of counsel. The judge found that defendant's claim that her attorney erred by allowing her to enter the plea without an adequate factual basis was barred because it could have been raised on appeal. Even so, the judge considered the claim on its merits and determined that it lacked merit.

The judge found that neither trial nor appellate counsel rendered ineffective assistance. The judge determined that defendant's assertions that her attorney pushed her to accept the plea were inconsistent and entitled to little weight. The judge stated that defendant had not raised sufficient credible facts to support her claim that counsel failed to provide her with clear advice and guidance.

The judge further found that counsel did not mislead defendant in explaining her mother's sentencing exposure, and

11

counsel's advice that defendant could not win at trial was not unreasonable in view of the strong evidence of defendant's guilt. Trial counsel also was not ineffective for failing to file a change in venue because defendant presented no evidence that she was prejudiced by pretrial publicity.

In addition, the judge found there was no merit to defendant's claim that her appellate counsel was ineffective for failure to challenge the court's decision to consolidate various counts in the indictment pertaining to her co-defendants. The judge concluded that because defendant had not presented a prima facie case of ineffective assistance of trial or appellate counsel, she was not entitled to an evidentiary hearing. The judge entered an order denying PCR. This appeal followed.

On appeal, defendant raises the following arguments:

POINT I

THE COURT BELOW ERRED IN DENYING DEFENDANT'S POST-CONVICTION RELIEF PETITION WITHOUT GRANTING HER AN EVIDENTIARY HEARING.

A. Representation by trial counsel

B. Representation by appellate counsel

POINT II

THE TRIAL COURT IMPROPERLY DENIED DEFENDANT'S APPLICATION TO WITHDRAW HER GUILTY PLEAS.

12

Defendant argues that the PCR court erred by denying her application for an evidentiary hearing on her PCR petition. She contends she presented a prima facie case of ineffective assistance of trial and appellate counsel. We disagree.

A defendant is entitled to an evidentiary hearing on a PCR petition if the defendant presents a prima facie case in support of PCR, the court determines there are material issues of fact that cannot be resolved based on the existing record, and the court finds that an evidentiary hearing is required to resolve the claims presented. R. 3:22-10(b); see also State v. Porter, 216 N.J. 343, 354 (2013) (citing R. 3:22-10(b)).

The Sixth Amendment to the United States Constitution and Article I, Paragraph 10 of the New Jersey Constitution guarantee criminal defendants the right to the effective assistance of counsel. State v. O'Neil, 219 N.J. 598, 610 (2014) (citing Strickland v. Washington, 466 U.S. 668, 686 (1984); State v. Fritz, 105 N.J. 42, 58 (1987)). To succeed on a claim of ineffective assistance of counsel, the defendant must meet the two-part test established by Strickland, 466 U.S. at 686, and adopted by our Supreme Court in Fritz, 105 N.J. at 58.

Under Strickland, a defendant first must show that his or her attorney made errors "so serious that counsel was not functioning

as the 'counsel' guaranteed the defendant by the Sixth Amendment." Strickland, 466 U.S. at 687. Counsel's performance is deficient if it "[falls] below an objective standard of reasonableness." Id. at 688.

A defendant also must show that counsel's "deficient performance prejudiced the defense." Id. at 687. The defendant must establish that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694. A "reasonable probability" is a "probability sufficient to undermine confidence in the outcome" of the proceeding. Ibid.

The right to the effective assistance of counsel extends to legal assistance related to the entry of a guilty plea. State v. Gaitan, 209 N.J. 339, 350-51 (2012). To set aside a guilty plea based on ineffective assistance of counsel, the defendant must "show that (i) counsel's assistance was not 'within the range of competence demanded of attorneys in criminal cases'; and, (ii) 'that there is a reasonable probability that, but for counsel's errors, [the defendant] would not have pled guilty and would have insisted on going to trial.'" State v. Nunez-Valdez, 200 N.J. 129, 139 (2009) (quoting State v. DiFrisco, 137 N.J. 434, 457 (1994) (citations omitted) (second alteration in original)).

Here, defendant argues that her attorney was deficient because he allegedly exerted "enormous pressure" upon her to accept the State's plea offer. She claims her attorney knew she was in a "very fragile emotional state" due to the impending loss of her daughter and the prospect that her mother would languish and die in prison. Defendant asserts her attorney told her that there was no chance she would be found not guilty of the charged offenses, and that her failure to accept the plea offer would result in her mother being tried and incarcerated for the remainder of her life.

Defendant further asserts she had a viable defense to the murder charge. She states that she did not inflict the fatal blow to Moore. She states she was not involved in the altercation that led to his death, and she was not present when the fatal blows were inflicted. She asserts her father did not implicate her in his plea colloquy. In addition, defendant's father provided a sworn statement in which he asserted that defendant was not involved in his fight with Moore.

Defendant claims that under the State's theory, at most, she was guilty as an accomplice. She asserts the State had to prove beyond a reasonable doubt that in directing Moore to go to the backyard on the day in question, it was her purpose that her father would kill Moore or inflict serious bodily injury, which caused his death. Defendant claims that despite these evidentiary

15                                                          A-0311-16T3

hurdles, her attorney demanded that she admit to facts that did not exist.

We are not persuaded by these arguments. The record supports the PCR court's finding that defendant did not present sufficient credible evidence to show that she was coerced to enter the plea agreement. As noted, at the plea hearing, defendant stated under oath that she had not been pressured to plead guilty. She stated that she understood the nature and consequences of the plea and was pleading guilty voluntarily. She also stated she was satisfied with the advice her attorney had provided.

Moreover, the judge found defendant's attorney had given defendant reasonable advice regarding her mother's sentencing exposure and the consequences that her guilty plea would have on her family. Defense counsel also reasonably advised defendant that she would probably be found guilty if she rejected the plea and proceeded to trial. The judge noted that there was substantial evidence to support defendant's guilt. The record supports that finding.

Furthermore, the judge correctly found that there was no merit to defendant's claim that she had a strong defense to the murder charge. "[T]o be guilty as an accomplice to murder, the defendant must intend for the principal to engage in the killing, and the defendant must act with purpose or knowledge in promoting

16

or facilitating the killing." State v. Norman, 151 N.J. 5, 32 (1997).

As the judge determined, defendant's purpose can be established by her "acknowledgement of the underlying facts." State v. Gregory, 220 N.J. 413, 419 (2015). At the plea hearing, defendant testified that she knew her father was planning to murder Moore when she convinced him to go to the backyard to retrieve his tools. Defendant stated she knew her father was waiting there to kill Moore and it was her job to get Moore to go to the backyard.

The judge correctly determined that defendant intended for her father to murder Moore, even if she did not specifically state that it was her purpose that Moore be killed when she sent him to the backyard, where her father was waiting. The record supports the judge's determination that defendant had the effective assistance of counsel with regard to her plea.

Defendant also argues that she was denied the effective assistance of appellate counsel. She contends there was no sound reason why her attorney did not argue on appeal that she failed to provide an adequate factual basis for her plea. She claims the factual basis for her plea was "egregiously ineffective" and caused her "actual prejudice." Again, we disagree.

As the PCR court found, defendant provided an adequate factual basis for her plea. Thus, appellate counsel was not deficient in

17                                                          A-0311-16T3

failing to raise that issue on appeal. Moreover, the result on the appeal would not have been different if the issue had been raised.

Therefore, we conclude defendant failed to present a prima facie case of ineffective assistance of counsel on the part of her trial or appellate attorneys. Accordingly, defendant was not entitled to an evidentiary hearing on her petition.

III.

Defendant argues that the PCR court erred by refusing to permit her to withdraw her plea.

Where, as here, defendant has filed a motion for the withdrawal of her plea after sentencing, she must show that withdrawal is required "to correct a manifest injustice." R. 3:21-1. "[A] plea may only be set aside in the exercise of the court's discretion." Slater, 198 N.J. at 156 (citations omitted).

In Slater, the Court identified four factors that the trial courts should consider when evaluating a motion to withdraw a guilty plea. Slater, 198 N.J. at 150. Those factors are: "(1) whether the defendant has asserted a colorable claim of innocence; (2) the nature and strength of defendant's reasons for withdrawal; (3) the existence of a plea bargain; and (4) whether withdrawal would result in unfair prejudice to the State or unfair advantage to the accused." Ibid. The court must consider and balance all

18                                                                    A-0311-16T3

factors. Id. at 162. "No factor is mandatory; if one is missing, that does not automatically disqualify or dictate relief." Ibid.

On appeal, defendant contends that she did not provide an adequate factual basis for the plea, and that she has asserted a colorable claim of innocence. She further argues she has compelling reasons to withdraw her plea because she was denied the effective assistance of counsel with regard to the plea. In addition, she contends the State would not be prejudiced and she would not have any advantage if permitted to withdraw the plea.

Here, the record fully supports the PCR court's denial of defendant's motion. Defendant failed to show that withdrawal of the plea is required "to correct a manifest injustice." R. 3:21-1; Slater, 198 N.J. at 156. As we have explained, defendant provided an adequate factual basis for her plea and, notwithstanding her arguments to the contrary, she did not present a colorable claim of innocence. She failed to "present specific, credible facts" in support of her claim of innocence. Id. at 158 (citations omitted).

The judge also found defendant did not present sound reasons to withdraw her plea. In addition, the judge determined that defendant had entered her plea as a result of a plea agreement, and the State would be prejudiced if defendant were allowed to

19

withdraw her plea. Defendant had already realized the benefit of her plea.

The judge pointed out that defendant entered her plea in part to protect her mother from a lengthy prison term, and defendant's mother would have served her full sentence by December 16, 2016. Furthermore, Morris had agreed to cooperate in the prosecution, and he had served his seven-year sentence. The judge found that Morris no longer had any incentive to cooperate in the prosecution. The record supports these findings.

Affirmed.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION

A-0311-16T3