# RECORD IMPOUNDED

## NOT FOR PUBLICATION WITHOUT THE
## APPROVAL OF THE APPELLATE DIVISION

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1771-19

STATE OF NEW JERSEY,

     Plaintiff-Respondent,

v.

DANIEL J. DINNEBEIL,
a/k/a DANIEL JOSEPH
DINNEBEIL DANNY, DAN,
DJ DANIEL DINNEBEIL, JR.,

     Defendant-Appellant.

_____

Argued May 3, 2021 – Decided July 6, 2021

Before Judges Currier and DeAlmeida.

On appeal from the Superior Court of New Jersey, Law Division, Monmouth County, Accusation No. 11-06-1120.

W. Les Hartman argued the cause for appellant (Kalavruzos, Mumola, Hartman & Lento, LLC, attorneys; Edward C. Bertuccio, of counsel and on the brief; Jessica A. Wilson, on the brief).

Monica do Outeiro, Assistant Prosecutor, argued the cause for respondent (Christopher J. Gramiccioni,

Monmouth County Prosecutor, attorney; Monica do Outeiro, of counsel and on the brief).

PER CURIAM

Defendant appeals from the November 27, 2019 order denying his petition for post-conviction relief (PCR) and motion to withdraw his guilty plea. We affirm.

In February 2011, defendant was arrested and charged with: (1) second-degree sexual assault, N.J.S.A. 2C:14-2(c)(4); and (2) second-degree endangering the welfare of a child, N.J.S.A. 2C:24-4(a). The charges arose after a confidential informant notified the New Jersey State Police that defendant, then twenty-three years old, was engaged in a sexual relationship with fifteen-year-old R.F.[1]

The subsequent investigation revealed that defendant and R.F. would meet and engage in sexual acts with older men for money. Defendant and a co-defendant arranged these meetings through a website under the guise of providing massage services. The police corroborated this information by talking with R.F. and taking a statement from co-defendant.[2]

---

[1] We use initials to preserve the confidentiality of court records concerning minors. R. 1:38-3(d)(9).

[2] Co-defendant committed suicide in April 2011.

A-1771-19

Shortly thereafter, defendant retained Steven Secare to represent him. On March 2, 2011, defendant, his father, and Secare met with the police to discuss the investigation and defendant's willingness to cooperate with law enforcement. During the meeting, defendant provided the police with an informal statement and contact information for one of his clients. The police produced defendant's advertisement on the website as well as a series of texts between the confidential informant and R.F. which detailed sexual acts between defendant and R.F.

Several days later, defendant attempted suicide by overdosing on medication. He also threatened to jump off the George Washington Bridge. He was admitted to the Carrier Clinic for several weeks. According to the discharge summary, defendant was "depressed for many years and . . . recently had a number of stressors including legal and emotional and interpersonal ones." Defendant was diagnosed with "[b]ipolar depressed without psychosis" and prescribed several medications.

The discharge physician advised that defendant "showed a slow, but steady improvement in mood. He worked through a number of his stressors, becoming much more optimistic with a clear plan for how to deal with his legal and social challenges." The doctor also noted defendant no longer exhibited any suicidal ideation.

A-1771-19

On April 13, 2011, defendant engaged in a proffer session with representatives from the Monmouth County Prosecutor's Office. The terms of the session were outlined in a letter sent from the assistant prosecutor and signed by defendant and Secare. Following the session, defendant provided a nineteen-page statement to various law enforcement agencies.

On June 14, 2011, defendant and his parents met with Secare to discuss the negotiation of a pre-indictment plea agreement with the State. The conversation was recorded and has since been transcribed. During the meeting, Secare explained that his "first job [was] to see whether the State can prove [defendant] guilty beyond a reasonable doubt." He then summarized the State's evidence, which included: statements defendant made to the police when he was arrested, R.F.'s texts to the confidential informant, a recording of a call to defendant from an undercover officer arranging a sexual encounter with R.F., and the statements of co-defendant and R.F.

Secare told defendant the evidence was "enough . . . certainly to convict [him]" and recommended defendant agree to a plea deal under which he would plead guilty to second-degree crimes but be sentenced as a third-degree offender. Secare also spent a significant amount of time answering questions posed by

defendant and his parents regarding the State's case, pre-trial proceedings, and the discussed plea deal.

Two days later, following plea negotiations with the prosecutor's office, defendant was charged in an accusation with: (1) second-degree sexual assault of a minor, N.J.S.A. 2C:14-2(c)(4) (count one); (2) second-degree promoting prostitution of a child under the age of eighteen, N.J.S.A. 2C:34-1(b)(3) (count two); and (3) third-degree endangering the welfare of a child, N.J.S.A. 2C:24-4(a) (count three).

That same day, on June 16, 2011, defendant appeared in court with Secare and, pursuant to his plea agreement, pled guilty to counts one and two. In exchange, the State dismissed count three and recommended concurrent four-year custodial terms on the first two counts, as well as the required registration with Megan's Law, and parole supervision for life. Defendant reserved the right to seek a three-year term of incarceration.

During the plea hearing, Secare informed the court he had explained to his client the significance of waiving a presentation to a grand jury and that defendant was "doing this voluntarily of his own free will with no coercion or duress in any manner." He further advised he had discussed the discovery with defendant on "several occasions" and recommended the plea "because the

5

discovery reveals that the State could have easily - - I shouldn't say easily - - but probably could have proven this case beyond a reasonable doubt." Secare further told the court that defendant "had a 3.6 [grade point] average [in college][3] so he understands what's going on very, very well."

The plea judge then confirmed defendant's understanding of the plea agreement. Defendant corroborated he had read and understood the substance of the plea agreement, and that Secare had answered all his questions regarding the plea and explained the charges. Defendant further advised Secare did not coerce or otherwise force him to plead guilty, he was satisfied with Secare's representation, and he was not suffering from any mental or physical condition or under the influence of any substance that would affect his ability to understand the plea agreement. Defendant also signed plea forms acknowledging the same. At one point, the plea judge took a break during the hearing "to be sure that if [defendant] sign[ed] [the plea form] [he] read the document completely and . . . had an opportunity to . . . ask [Secare] any and all questions [he] might have." Defendant also gave a factual basis in support of the guilty plea.

---

[3] Defendant later testified he had achieved both an undergraduate and Master's degree.

In accepting the plea, the judge found there was an adequate factual basis for the plea and that defendant understood the nature of the charges and the consequences of the plea. He further found defendant "entered the plea . . . knowingly, voluntarily, and with the assistance of competent counsel with whose services he . . . indicated he [was] satisfied."

In September 2011, prior to the sentencing hearing, defendant dismissed Secare as counsel and hired a new attorney – Edward Bertuccio. Bertuccio immediately filed a motion to withdraw defendant's guilty plea based on alleged ineffective assistance of counsel and defendant's mental state at the time of the plea hearing. Thereafter, Bertuccio re-negotiated the terms of the plea agreement to include a non-custodial sentence based on defendant's deteriorating mental state[4] and his fruitful cooperation with the police.

The sentencing hearing was scheduled before Judge Lisa P. Thornton (now A.J.S.C) on July 12, 2012 – over a year after the entry of the guilty plea. The day before the hearing, defendant called the judge's chambers several times.

---

[4] Bertuccio produced a letter from defendant's treating psychologist, which indicated defendant was suffering from a mood disorder, "which to a reasonable degree of psychological probability [was] Bipolar II . . . ." The psychologist stated the illness affected defendant's "mood, behavior, decision making, [and] judgment [and] ma[d]e his decision making more impulsive and less knowing . . . ."

A-1771-19

Defendant informed the judge's law clerk he had dismissed Bertuccio as his attorney, he wanted to vacate his guilty plea and proceed to trial, and he was considering checking himself into a psychiatric facility. Defendant's demeanor during the call was described as "upset and frantic . . . ."

When defendant appeared in court the following day, he told Judge Thornton he no longer wanted Bertuccio to represent him and he wished to continue with his motion to withdraw his guilty plea. Defendant stated multiple times that he did not require immediate psychiatric assistance. Bertuccio, the prosecutor, and defendant's family members asked the court to compel defendant to undergo a psychiatric evaluation given his prior mental health issues. Judge Thornton characterized defendant as "not really fully coherent" and "mentally fragile."

When defendant admitted he had stopped taking his medication, Judge Thornton suggested to defendant's family members that they take him to a mental health facility. After defendant repeatedly stated he would not go, the State asked the judge to revoke his bail and require defendant to undergo an immediate psychiatric evaluation, pursuant to N.J.S.A. 2C:4-5, to assess his fitness to proceed.

A-1771-19

Judge Thornton granted the State's motion and modified defendant's bail conditions, requiring defendant to undergo a psychiatric examination and competency evaluation. When defendant indicated he would not comply, the judge granted the State's request to revoke his bail. Defendant was remanded into custody pending the completion of psychiatric and competency evaluations. The public defender also assigned new counsel.

On November 15, 2012, Dr. Raymond Terranova, Ph.D. evaluated defendant's competency to proceed. He issued his findings in a November 30, 2012 report. Dr. Terranova found defendant did not suffer from "impaired cognitive functioning." He also concluded that defendant had "an appreciation for the seriousness of his charges and their potential consequences," displayed a "strong conceptual understanding of the roles of the court figures (judge, prosecutor, and defense attorney)[,] demonstrated the ability to apply rational judgment to his case, and expressed his intention of cooperating with his attorney." Accordingly, Dr. Terranova concluded, within "a reasonable degree of psychological certainty," that defendant was "competent to stand trial."

Represented by public defender Elizabeth Hampton, defendant appeared at a status conference in January 2013. The judge advised defendant his options were to move forward with his motion to withdraw his guilty plea and go to trial

or withdraw the motion and proceed with sentencing pursuant to the renegotiated plea deal. Hampton's request for an adjournment was granted. During the PCR hearing, Hampton testified she had spoken to defendant "a handful of times" regarding the advantages and disadvantages of pursuing the motion to withdraw his guilty plea.

Defendant next appeared in court in February 2013, now represented by public defender Jeffrey Coghlan. Coghlan advised the court that he and defendant had reviewed "all of th[e] paperwork" and "discussed [the motion to withdraw his guilty plea] at length", and defendant "advised . . . that he wanted to withdraw the motion . . . ." Coghlan further stated that he was "satisfied that [defendant] understood everything" they had discussed, gave "responses . . . that made sense [and] . . . were coherent," and was "mentally stable and coherent and . . . made a sound decision . . . to withdraw [the] pending motion . . . ." Therefore, Coghlan requested the court grant defendant's motion to withdraw his guilty plea and proceed to sentencing.

The court then engaged in a lengthy colloquy with defendant to ascertain whether he had discussed the matter with his new attorney and understood the consequences of withdrawing the motion and proceeding to sentencing. Defendant advised he was not "suffering from any physical or mental condition

10

that might in any way affect [his] ability to understand" the court proceedings. He also indicated he was not "under the influence of any alcohol or drugs, including any prescription medication, that might affect [his] ability to understand" the proceedings.

Although defendant confirmed he was taking medication for his mental health condition, he stated the medication did not "affect[] his judgment" or "interfere with [his] ability to understand . . . ." The judge specifically informed defendant he had a right to have the court consider the motion to withdraw his plea that day. Defendant responded that he wanted to withdraw his motion to withdraw his guilty plea, he was not coerced into withdrawing the motion, and he was satisfied with Coghlan's representation.

After an exhaustive review of the applicable aggravating and mitigating factors, the court found the mitigating factors substantially outweighed the aggravating factors. The court sentenced defendant to parole supervision for life and compliance with the requirements of Megan's Law.

Defendant appealed, once again represented by Bertuccio. He asserted (1) the trial court erred in permitting him to withdraw his motion to vacate his guilty plea and in sentencing him without holding a competency hearing; (2) Secare provided ineffective counsel and improperly pressured him to enter a guilty plea;

11

(3) Coghlan was ineffective for not litigating the motion to withdraw his guilty plea and in not demanding a competency hearing with medical testimony; and (4) his sentence was unlawful and should be vacated.

We affirmed defendant's convictions and sentence. State v. Dinnebeil, No. A-5894-12 (App. Div. Feb. 26, 2015). The panel declined to consider defendant's ineffective assistance of counsel arguments, noting they were better suited for a PCR petition. Id. at 4.

In rejecting defendant's argument that the court should have conducted a competency hearing, we noted that Judge Thornton properly ordered a competency evaluation in light of defendant's mental health history and conduct before and during the July 13, 2012 hearing, stating the judge "carefully followed the procedures set forth in N.J.S.A. 2C:4-4, N.J.S.A. 2C:4-5, and N.J.S.A. 2C:4-6." Id. at 6. However, because "Terranova's report did not raise a bona fide doubt as to [defendant]'s competence as defined in the statute, the judge was not required to 'hold a hearing on the issue.'" Ibid. (citations omitted). We also highlighted the lack of a contrary expert opinion, noting that while the letter from defendant's therapist expressed concerns about his mental state, it did not conclude he was legally incompetent. Ibid.

12

Defendant filed a PCR petition, asserting—among other things—ineffective assistance of counsel by Secare and Coghlan. He also presented a report from a psychiatric evaluation with Dr. Charles F. Martinson, J.D., M.D., conducted in September 2016.

In his February 8, 2017 report, Dr. Martinson explained that the objective of the evaluation was to ascertain whether defendant was competent to plead guilty in 2011 and what his "state of mind [was] at the time of the events giving rise to the criminal charges against him." Dr. Martinson reviewed defendant's medical records, court transcripts, and information acquired during a "clinical interview . . . at [defendant's] family home."

Dr. Martinson concluded that defendant was incompetent to enter into a plea bargain in 2011. He stated that: (1) defendant was incompetent to plead guilty because he was "floridly psychotic and laboring under a clinical condition which impaired his ability to . . . distinguish between fantasy and reality" at the time of his guilty plea; and (2) defendant possessed "a colorable defense of duress . . . against these charges," but due to his "delusional system" and Secare's advice, "he was persuaded to confess to investigating officers without asserting that his will was overborne and he was forced to engage in this conduct."

A-1771-19

The court granted defendant's request for an evidentiary hearing on the PCR petition. In preparation for the hearing, the State requested an additional evaluation of defendant's competency. Dr. Terranova, who had previously evaluated defendant in November 2012, conducted a second evaluation and issued a report on October 19, 2018. After reviewing extensive documentation including Dr. Martinson's report and incorporating his own observations, Dr. Terranova concluded that defendant was competent to stand trial.

Judge Paul X. Escandon presided over defendant's PCR hearing which took place over eight days between April 16 and October 7, 2019. The judge heard testimony from defendant, his mother, Secare, Hampton, Coghlan, and Drs. Martinson and Terranova.

On November 27, 2019, Judge Escandon issued a comprehensive written opinion and order denying defendant's PCR petition and motion to withdraw his guilty plea.

The judge rejected defendant's ineffective assistance of counsel argument regarding Secare, finding defendant failed to show Secare coerced him into pleading guilty. Judge Escandon stated: While "[d]efendant had limited time upon meeting with Mr. Secare to decide whether to plead guilty," Secare explained to defendant how the discovery indicated a "very high chance" of the

14

State securing a conviction and that "pleading guilty would have been the proper course of action."

The judge also noted defendant's parents were "embarrassed" about their son's legal situation and "requested that the legal matter be resolved forthwith." In addition, Judge Escandon found the record was devoid of any facts to suggest "[d]efendant was adamantly opposed to . . . plead[ing] guilty." To the contrary, defendant told the plea judge he was not coerced into pleading guilty. Therefore, Judge Escandon concluded "[d]efendant's acceptance of the plea deal was voluntary."

The judge next addressed defendant's argument that his guilty plea should be withdrawn because of Secare's alleged coercion. In doing so, Judge Escandon used the analytical framework established under State v. Slater, 198 N.J. 145 (2009).

Judge Escandon found defendant had not demonstrated a colorable claim of innocence because his defenses that he was under duress and suffering from diminished capacity were not supported by plausible facts. The judge made extensive findings supporting his determinations that defendant could not assert his proposed defenses.

In sum, defendant asserted a duress claim based on his assertion that R.F. raped him in December 2010. However, the judge noted the claim was "meritless" because defendant "unreasonably and recklessly maintained communications with R.F. even after the alleged incident . . . ."

Judge Escandon found defendant could not establish a diminished capacity defense because there was no "substantiated support" in the record that he was "suffering from diminished capacity at the time of and after the alleged sexual incident." Therefore, the first Slater prong weighed against defendant.

Turning to the second Slater factor – the nature and strength of defendant's reasons for withdrawal – the judge found this factor weighed "significantly" in favor of the State because defendant wished to withdraw his guilty plea based on Secare's alleged coercion. However, since the judge found defendant was not coerced into pleading guilty, he could not establish this factor.

Judge Escandon found the third factor – the existence of a plea bargain – weighed "only slightly" in favor of the State, noting that although defendant accepted a plea deal, most plea deals are negotiated. Lastly, the judge found the fourth factor weighed "only slightly" in defendant's favor since the withdrawal of his plea would only lead to a "minimum level of prejudice to the State."

16

Therefore, Judge Escandon determined "the totality of the Slater factors weighs largely against" granting defendant's motion to withdraw his guilty plea.

The judge also addressed and rejected defendant's argument that Coghlan was ineffective for failing to pursue defendant's motion to withdraw his guilty plea or to request a competency hearing. Judge Escandon found Coghlan had reviewed prior counsel's notes, the pre-sentence report, Dr. Terranova's report and consulted with defendant before he withdrew the motion at defendant's request. The judge stated: "Defendant has not shown that . . . Coghlan's conduct fell below an objective standard of reasonableness under Strickland[5] and . . . [d]efendant's reasons for withdrawing the guilty plea under Slater are insufficient."

In considering defendant's argument that Coghlan was ineffective for failing to request a competency hearing, Judge Escandon noted that Judge Thornton had ordered a competency evaluation under N.J.S.A. 2C:4-4. Moreover, Dr. Terranova's evaluation of defendant "did not present any bona fide doubt as to [] [d]efendant's competency to stand trial . . . ." To the contrary, Terranova's evaluation conclusively determined that defendant was competent and possessed a basic understanding of the judicial system and the charges

---

5 Strickland v. Washington, 466 U.S. 668 (1984).

against him. Therefore, defendant had not shown Coghlan was deficient in his representation.

Judge Escandon denied defendant's PCR petition and motion to withdraw his guilty plea. This appeal followed.

Defendant presents the following arguments for our review:

> I. THE PCR COURT ERRED IN DENYING [DEFENDANT]'S PETITION FOR POST-CONVICTION RELIEF AS [DEFENDANT]'S ORIGINAL COUNSEL WAS CONSTITUTIONALLY INEFFECTIVE AND IMPROPERLY PRESSURED [HIM] TO ENTER A GUILTY PLEA
>
> II. THE PCR COURT ERRED IN DENYING [DEFENDANT]'S PETITION FOR POST-CONVICTION RELIEF AS THE DEPUTY PUBLIC DEFENDER WHO FOLLOWED ORIGINAL COUNSEL WAS INEFFECTIVE IN NOT LITIGATING THE MOTION TO WITHDRAW THE GUILTY PLEA AND IN NOT OBTAINING A DEFENSE EXPERT AND IN NOT DEMANDING THAT A COMPETENCY HEARING OCCUR, WITH MEDICAL TESTIMONY, WITH REGARD TO [DEFENDANT]
>
> III. THE PCR COURT ERRED IN DENYING [DEFENDANT]'S PETITION FOR POST-CONVICTION RELIEF AS THE TRIAL COURT ERRED IN PERMITTING [DEFENDANT] (1) TO WAIVE HIS RIGHT TO PURSUE HIS MOTION TO WITHDRAW HIS GUILTY PLEA AND (2) AGREEING TO BE SENTENCED WITHOUT HOLDING THE LEGALLY REQUIRED COMPETENCY HEARING

18

IV. THE PCR COURT ERRED IN DENYING [DEFENDANT]'S PETITION FOR POST-CONVICTION RELIEF AS THE TRIAL COURT ERRED IN DENYING [DEFENDANT] 'S MOTION TO WITHDRAW HIS GUILTY [PLEA]

1. [Defendant] Has Asserted a Colorable Claim of Innocence

2. The Nature and Strength of [Defendant]'s Reasons for Withdrawal of the Guilty Plea

3. The Existence of a Plea Bargain is Not Dispositive in this Case

4. Withdrawal Would Not Result in Unfair Prejudice to the State or an Unfair Advantage to the Accused

After reviewing the record, we conclude that Judge Escandon thoroughly addressed defendant's contentions and the arguments are without sufficient merit to warrant further discussion here. R. 2:11-3(e)(2). We add only the following comments.

Secare testified during the PCR hearing that he was impressed with defendant's intelligence and found him to be articulate. He said defendant was forthcoming regarding his prostitution activity and his "enjoyment" at "having sex with young boys." Because of defendant's candor, Secare believed the best course of action to mitigate defendant's criminal and sentencing exposure was

19

to cooperate with law enforcement. We discern no reason to disturb Judge Escandon's determination that Secare was not ineffective in his representation.

To the extent we have not addressed defendant's remaining arguments, we affirm for the reasons stated in Judge Escandon's opinion.

Affirmed.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION

A-1771-19