**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2190-21

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

EMILE G. CONSTABLE, JR.,

    Defendant-Appellant.

_____

Submitted November 6, 2023 – Decided February 20, 2024

Before Judges DeAlmeida and Berdote Byrne.

On appeal from the Superior Court of New Jersey, Law Division, Middlesex County, Indictment No. 16-08-1292.

Joseph E. Krakora, Public Defender, attorney for appellant (Andrew Robert Burroughs, Designated Counsel and on the briefs).

Yolanda Ciccone, Middlesex County Prosecutor, attorney for respondent (Joie D. Piderit, Assistant Prosecutor, of counsel and on the brief).

PER CURIAM

Defendant, Emile Constable, appeals from an October 20, 2021, order denying his petition for post-conviction relief (PCR) without an evidentiary hearing and denying his motion to withdraw his guilty plea. Defendant argues the PCR court improperly found he failed to demonstrate a prima facie case of ineffective assistance of counsel on multiple claims. Discerning no error, we affirm.

I.

On February 24, 2016, Edison police arrived at Hillcrest Avenue, where officers found an unresponsive male — later identified as Aniq Ali (decedent) — in a vehicle still running. The decedent had no pulse, and ten empty bags marked "Magoo" surrounded his body. The bags later tested positive for heroin and fentanyl. Upon searching decedent's phone, officers observed a text conversation between decedent and "Oatmeal" organizing a drug sale for earlier that night. Officers also found an unsent message from decedent to "Oatmeal," stating "[y]o, brah, I'm going to keep six, and . . . a thousand percent . . . that shit had barely anything in it, and . . . three bags were pretty much empty, and . . . it wasn't even dope. That shit was some white epoxy crushed up."

Although defendant was known by various aliases, he was positively identified by a former high-school classmate, a confidential informant/buyer

(CI), and two of his associates as "Oatmeal," and as the owner of the phone number ascribed to "Oatmeal" in decedent's phone. Additionally, the CI told police she purchased heroin stamped "Magoo" from defendant on the same day decedent died. One day after decedent's death, the CI arranged for defendant to sell her drugs at a motel. As police tracked "Oatmeal's" phone, they found it was moving in the direction of the same motel. Officers intercepted the vehicle defendant was traveling in and searched him incident to his arrest. They found twenty-three bags containing an unknown substance, some stamped "Magoo." One bag later tested positive for fentanyl and heroin.

Although the medical examiner did not complete an internal autopsy of decedent because of decedent's family's religious beliefs, he conducted an external exam and toxicology assessment. The decedent's cause of death was determined to be acute combined drug toxicity due to fentanyl and heroin.

Defendant was charged with the following offenses: first-degree strict liability for drug induced death, contrary to N.J.S.A. 2C:35-9 (count one); third-degree distribution and possession with intent to distribute a controlled substance, contrary to N.J.S.A. 2C:35-5a(1) and N.J.S.A. 2C:35-5b(13)(counts two and four); third-degree possession of controlled substance, contrary to N.J.S.A. 2C:35-10a(1)(count three); fourth-degree hindering apprehension,

A-2190-21

contrary to N.J.S.A. 2C:29-3b(1)(count five); and third-degree hindering apprehension, contrary to N.J.S.A. 2C:29-3b(4)(count six).

Approximately one month before defendant's rescheduled trial date, his trial counsel filed a motion to be relieved, stating there was a "total lack of cooperation" from defendant over the previous four months. As the PCR court noted, trial counsel attempted to schedule multiple meetings and telephone conversations with defendant to no avail, and defendant failed to respond to any of trial counsel's requests to meet and prepare. Days before trial was set to commence on the rescheduled trial date, and approximately one month after trial counsel's motion to be relieved had been denied, defendant accepted a plea offer.

Pursuant to the plea agreement, defendant pleaded guilty to first-degree strict liability for drug induced death, and third-degree possession with intent to distribute a controlled substance. The State agreed to dismiss the remaining four counts and recommended an eight-year sentence on count one, subject to the No Early Release Act (NERA),[1] to run concurrent to a three-year sentence on count four.

Following extensive questioning, the trial court accepted the plea, finding the plea was entered "knowingly, freely, and intelligently" and grounded in

---

[1] N.J.S.A. 2C:43-7.2

sufficient factual basis.  The trial court later sentenced defendant in accordance with the plea agreement to eight years, subject to NERA, with a five-year parole supervision period, a concurrent term of three years on count four, and dismissed the four remaining counts.  The trial court found aggravating factors three and nine and no mitigating factors.

Defendant challenged his sentence pursuant to Rule 2:9-11 on the Sentencing Oral Argument ("SOA") calendar, arguing the sentencing court failed to find any mitigating factors, although five factors were present.  We affirmed the sentence.  State v. Constable, No. A-2189-21 (App. Div. Jan. 9, 2023) (slip op. at 1).

In 2019, defendant filed a PCR petition asserting numerous claims of ineffective assistance of counsel.  Additionally, he claimed he successively asserted a colorable claim of innocence, requiring withdrawal of his guilty plea.

The trial court applied the two-prong test established in Strickland v. Washington, 466 U.S. 668 (1984), and the four factors in State v. Slater, 198 N.J. 145 (2009), and entered an order denying defendant relief.  This appeal followed.

II.

A PCR judge's legal conclusions are reviewed de novo, and where, as here, the judge declines to hold an evidentiary hearing, we may "conduct a de novo review of both the factual findings and legal conclusions" of the PCR judge. State v. Harris, 181 N.J. 391, 419, 421 (2004).

A.    Ineffective assistance of counsel.

In a petition for PCR asserting ineffective assistance of counsel, we are guided by the standards set forth in Strickland, 466 U.S. 668 and State v. Fritz, 105 N.J. 42 (1987), which adopted the Strickland standard in New Jersey. Moreover, the PCR court should grant an evidentiary hearing only where defendant has established a prima facie case of ineffective assistance of counsel pursuant to Strickland. See R. 3:22-10(b).

A defendant will be entitled to PCR for ineffective assistance of counsel if he shows, by a preponderance of the evidence, (1) "[defendant's] counsel's performance was deficient," and (2) this "deficient performance prejudiced the defense." Fritz, 105 N.J. at 52 (quoting Strickland, 466 U.S. at 687); State v. Echols, 199 N.J. 344, 357 (2009). When the matter involves a guilty plea, the second prong requires defendant establish "a reasonable probability that, but for counsel's errors, [the defendant] would not have pled guilty and would have

A-2190-21

insisted on going to trial." State v. Nuñez-Valdéz, 200 N.J. 129, 139 (2009) (alteration in original) (quoting State v. DiFrisco, 137 N.J. 434, 457 (1994)). Moreover, the defendant must show "that a decision to reject the plea bargain would have been rational under the circumstances." Padilla v. Kentucky, 559 U.S. 356, 372 (2010); State v. Maldon, 422 N.J. Super. 475, 486 (App. Div. 2011).

Defendant claims several errors made by trial counsel prejudiced him, including: 1) failure to consult an independent forensic pathologist to determine whether defendant had a causality defense as to decedent's cause of death; 2) failure to advise defendant about the strengths and weaknesses of the State's case and the probability of success of a lack of causality defense; 3) failure to seek a lower sentence and advocate for mitigating factors; and 4) failure to investigate and file a suppression motion for evidence seized during the search incident to defendant's arrest.

The trial court detailed the dates and times of trial counsel's repeated attempts to meet or speak with defendant to establish a defense, then ruled:

> Based upon this prior history, [defendant] cannot be heard to complain about the performance of plea counsel since he, himself, abdicated his opportunity and responsibility to engage with plea counsel in developing a defense. There is no basis upon which [defendant] can now assess the adequacy of plea

7

counsel's performance since plea counsel, due to [defendant's] absence, was left to his own decision-making regarding choices to be made in preparation for trial, in addition to the development of certain legal contentions to be advanced on behalf of the defense without input from [defendant]. Through his willful absence and void of any attempts to meet with plea counsel, it seems clear that [defendant] entrusted all such determinations to the sound discretion of plea counsel, a choice which this [c]ourt will not now second guess as "unreasonable" given the circumstances leading up to the [defendant's] plea. This is in keeping with the understanding that a reviewing court must not "second guess" what, on its face, were reasonable and professional judgments by plea counsel, evaluating the challenged conduct from plea counsel's perspective at the time. Kimmelman v. Morrison, 477 U.S. 365, 382 (1986); Strickland v. Washington, 466 U.S. 668, 690 (1984); State v. Fritz, 105 N.J. 42, 52 (1987).

The court also found trial counsel's performance was effective, in light of the evidence and circumstances, and benefitted defendant:

[N]one of the decisions made by plea counsel inured to the detriment of [defendant], since the filing of a motion without consulting [defendant] would trigger the State's escalating plea offer policy and prevent [defendant] from being able to negotiate a more favorable sentencing recommendation just as he did on the [rescheduled trial date]. This would also include the choice by plea counsel not to retain an expert to contest the State's failure to conduct a full autopsy of the victim.

We agree. Defendant cannot voluntarily abstain from interacting with his appointed trial counsel, refuse to participate in the preparation of any legal

8

strategy or defense, then claim ineffective assistance of counsel after a carefully negotiated and properly allocuted plea deal is entered.

Additionally, even if trial counsel's performance had been deficient in some regard, defendant fails to demonstrate there is a reasonable probability he would have rejected the offered plea pursuant to the second prong of Strickland. See State v. O'Donnell, 435 N.J. Super. 351, 369-70 (App. Div. 2014) (quoting Hill v. Lockhart, 474 U.S. 52, 59 (1985)). The trial court aptly noted trial counsel negotiated a plea agreement which presented defendant with less than half the exposure he would have faced at trial, and the decision to negotiate a favorable plea offer was an informed strategic choice based on the evidence presented. See Strickland, 466 U.S. at 690-91.

The record shows, prior to the adjournment of the first trial date for unrelated reasons, trial counsel and defendant initially discussed a plea with the State in exchange for cooperation, but those efforts did not result in a plea deal. Ultimately, defendant pleaded guilty to only two counts of the indictment in exchange for dismissal of the four remaining counts, for a maximum term of eight years subject to NERA, although he was facing an exposure of a possible thirty years. Defendant fails to demonstrate a rational person would have rejected this plea deal.

9

At his plea colloquy, defendant confirmed he reviewed all discovery with his trial counsel, was satisfied by the representation he received, and did not need additional time to confer with trial counsel. On appeal, defendant makes bald assertions regarding trial counsel's ineffective performance, stating he would not have pleaded guilty to strict liability for drug-induced death if he knew he could have challenged the decedent's cause of death. In doing so, he ignores the weight of the evidence against him, including the text messages to and from decedent on decedent's phone, the CI information and identification, his identification from three other witnesses as "Oatmeal," and the positive toxicology results for the drugs found in decedent's body and on defendant's person. A suppression motion, even if successful, would have suppressed the drugs found on defendant's person, relevant only to the plea for possession. Because that sentence ran concurrently with the eight-year sentence on count one, it would not have affected the overall length of the sentence. We conclude defendant's failure to demonstrate a prima facie case of ineffective assistance of counsel did not warrant an evidentiary hearing. See State v. Preciose, 129 N.J. 451, 462-63 (1992); R. 3:22-10(b).

B.    Withdrawal of Guilty Plea.

The decision to allow the withdrawal of a guilty plea lies within the trial court's discretion, Slater, 198 N.J. at 156, and we review for abuse of discretion. State v. Simon, 161 N.J. 416, 444 (1999).

A court must consider and balance four factors when evaluating a motion to withdraw a guilty plea:  "(1) whether the defendant has asserted a colorable claim of innocence; (2) the nature and strength of defendant's reasons for withdrawal; (3) the existence of a plea bargain; and (4) whether withdrawal would result in unfair prejudice to the State or unfair advantage to the accused." Slater, 198 N.J. at 157-58.

Defendant argues he met the four factors required to necessitate a plea withdrawal pursuant to Slater, and the court's denial of his withdrawal motion was in error.  Specifically, he contends:  (1) "even if [he] did [what] he admitted to [doing in] his plea hearing, his conduct did not cause [the] decedent's death," proving a colorable claim of innocence; (2) there is reasonable probability his conduct did not cause the decedent's death; (3) the third factor should "receive[] the least weight in the overall analysis[,]" State v. Munroe, 210 N.J. 429, 443 (2012); and (4) "the passage of time is an insufficient reason not to correct an injustice[,]" State v. Ways, 180 N.J. 171, 197 (2004).

11

The PCR court disagreed, finding:

> [Defendant] does not assert a colorable claim of innocence for several reasons. First, [defendant] provided this [c]ourt with a factual basis for guilt wherein he admitted to meeting with Aniq Ali to sell him a quantity of heroin Mr. Ali had solicited from him by way of text message communications. Having sold him the heroin as he had arranged to do, [defendant] also admitted that he knew that said heroin caused Mr. Ali's death when Mr. Ali consumed the substance after the purchase. [Defendant] also admitted to being in possession of heroin on the day of his arrest, which was found on his person by way of a search incident to his arrest. He clarified that he had the heroin with the purpose to distribute it to others. He also confirmed that he knew the drugs found on his person were tested by the laboratory and came back as a combination of heroin and fentanyl. [Defendant] concluded his plea voir dire by admitting that he sold Mr. Ali, whom he knew from middle school and high school, heroin that was tested by the laboratory with positive results for a mixture of fentanyl and heroin combined. As per photographs and text messages that he reviewed, [defendant] concluded that he was aware that Mr. Ali was ingesting those drugs as he was attempting to contact [defendant] about the quality of his purchase, and as he died as a result of ingesting those drugs. [Defendant] confirmed that he understood that though he sold what was believed to be heroin to Mr. Ali, because that heroin was also mixed with fentanyl [defendant] was "strictly liable" for causing Mr. Ali's death. [Defendant], during this voir dire, also admitted that a review of his cellphone messages on his IPhone contradicted his attempt to call another individual as an alibi witness because those messages confirmed that he was never with that individual at the time and date proposed in support of said alibi. His final statement

was that he was pleading guilty because he was, in fact, guilty to the charges and that he was entering his plea in lieu of continuing with his trial.

In the end, it is clear that [defendant] did commit the crimes to which he [pleaded] guilty based on his own admissions under oath, admissions which he asserted were made knowingly, intelligently, and voluntarily, and upon the advice of counsel with whom he was satisfied, and after reviewing all of the State's discovery. His attempt to demonstrate otherwise by alleging in his petition for relief that he did not have the phone utilized to arrange the transaction with Mr. Ali, and that the drugs he possessed at the time of his arrest were not for purposes of distribution, are without merit and belied by his plea voir dire. He fails to identify the requisite specific and credible facts in the record required to support a colorable claim of innocence, thus he is not innocent of the charges and has failed to satisfy the first prong of Slater.

We agree with the trial court defendant is unable to satisfy any of the elements set forth in Slater. Defendant cannot demonstrate a colorable claim of innocence on this record. Even if Xanax was also found in decedent's system, his own after-retained medical expert did not opine Xanax caused decedent's death, only that acute combined drug toxicity, including the fentanyl and heroin, caused his death, which is consistent with the medical examiner's report. Given the timing of decedent's death, immediately after ingesting the fentanyl, in a car still running, with an unsent text to defendant on his phone complaining of the

drugs defendant sold him, defendant cannot colorably claim the fentanyl was not the cause of decedent's death.

In sum, we affirm the denial of PCR, the denial of an evidentiary hearing, and the denial of defendant's motion to withdraw his guilty plea. To the extent we have not addressed plaintiff's remaining arguments, we find they are without sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION

A-2190-21