**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2015-23

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

JAMES S. GOYDOS,

    Defendant-Appellant.

_____

Argued September 16, 2025 – Decided September 30, 2025

Before Judges Currier, Smith and Jablonski.

On appeal from the Superior Court of New Jersey, Law Division, Middlesex County, Indictment No. 18-12-1698.

Ernesto Cerimele argued the cause for appellant (Klingeman Cerimele, attorneys; Ernesto Cerimele, on the briefs).

David M. Liston, Assistant Prosecutor, argued the cause for respondent (Yolanda Ciccone, Middlesex County Prosecutor, attorney; David M. Liston, of counsel and on the brief).

PER CURIAM

Defendant appeals from the denial of his petition for post-conviction relief (PCR) following an evidentiary hearing. In his petition and at the hearing, defendant contended the evidence relied upon by the State and referenced in the affidavit to secure a search warrant was "planted" in his computer. The PCR judge denied the petition, finding the State's witnesses were more credible regarding the access to defendant's computer. The PCR judge also found, even if the objectionable evidence was excised from the affidavit, probable cause still existed to obtain the warrant.

On appeal, defendant raises the following arguments for our consideration:

> POINT I
> THIS COURT NEED NOT DEFER TO THE PCR COURT'S FACTUAL FINDINGS BECAUSE THEY WERE NOT SUPPORTED BY SUFFICIENT CREDIBLE EVIDENCE AND IGNORE TESTIMONIAL EVIDENCE.
>
> POINT II
> THE NEWLY DISCOVERED EVIDENCE PRESENTED DURING [DEFENDANT'S] POST-CONVICTION RELIEF APPLICATION SATISFIED THE TEST PROMULGATED BY THE NEW JERSEY SUPREME COURT IN STATE V. CARTER.
>
> a. FIRST AND THIRD PRONGS OF THE CARTER TEST.
>
> b. SECOND PRONG OF THE CARTER TEST.

2

POINT III
THE "LIMITED" EVIDENTIARY HEARING
ORDERED BY THE COURT WAS INSUFFICIENT
TO CONSIDER WHETHER [DEFENDANT] HAD
MET HIS BURDEN PURSUANT TO FRANKS.

After a careful review of defendant's contentions in light of the applicable principles of law and the record, we affirm substantially for the reasons expressed in Judge Michael Toto's comprehensive written opinion.

In our opinion on direct appeal affirming defendant's sentence, we summarized the facts:

> Defendant was a surgeon at Rutgers Cancer Institute (Institute) and a professor of surgery at Rutgers Medical School. He was charged in a 160-count indictment with multiple counts of official misconduct, computer theft, burglary, invasion of privacy, impersonation, and possession of an assault weapon. The charges rose from the discovery of a hidden camera in a women's bathroom at the Institute, videos of women using the bathroom found on the Institute director's office computer, sightings of defendant using the director's office without permission, and a rifle found in defendant's basement during the execution of a search warrant. Covert recording devices found during the search of defendant's home matched the recording equipment found in the director's office.

> In a negotiated plea agreement, defendant pleaded guilty to second-degree computer theft, N.J.S.A. 2C:20-25(e); second-degree official misconduct, N.J.S.A. 2C:30-2(a); second-degree possession of an assault rifle, N.J.S.A. 2C:39-5(f);

3

third-degree burglary, N.J.S.A. 2C:18-2(a)(1); third-degree computer theft, N.J.S.A. 2C:20-25(a); and fourth-degree impersonation, N.J.S.A. 2C:21-17(a)(4). The State agreed to dismiss the 116 counts of invasion of privacy regarding the hidden cameras.

[State v. Goydos, No. A-4504-19 (App. Div. 2022) (slip op. at 2-3).]

Defendant was sentenced to 300 days in county jail, and four years' probation, and entered a consent order forfeiting his public employment. Defendant was released on May 18, 2022, after serving 108 days of jail time.

During the pendency of the criminal action, defendant filed a civil action against Rutgers, its employees and others in the Federal District Court for the District of New Jersey, alleging various constitutional, employment, and tort claims. Goydos v. Rutgers, State Univ., No. 19-08966, 2021 WL 5041248 (D.N.J. Oct. 29, 2021). Defendant retained John Lucich as an expert in computer forensic analysis.

Lucich analyzed the evidence used against defendant in the criminal prosecution and issued a report, in which he concluded the evidence relied upon by the State was "planted," "taint[ed]," and unreliable.

This report served as the impetus for defendant's PCR petition and his motion to withdraw his guilty plea. After hearing arguments on the petition,

4

Judge Toto ordered an evidentiary hearing with testimony "limited to the issue of computer forensics as described in [defendant]'s application."

During the hearing, the State produced two witnesses. Adrian Rodriguez, the former director of information systems and technology for the Institute, testified that he was asked by a Rutgers administrator to make a copy of defendant's computer for a "workplace investigation." No one advised him it was for a criminal investigation or action. Rodriguez directed his subordinate, Barry Shandolow, the former manager of end user support for the Institute, to discreetly do the imaging. Rodriguez stated that, after receiving the image from Shandolow, he kept it on his physical person or locked in his office. He later brought the image to a meeting with lawyers and investigators retained by the Institute. Rodriguez denied planting any evidence on any of defendant's devices and that the Institute made any request to alter or plant evidence.

Shandolow also testified, confirming that Rodriguez asked him to "make a clone" of [defendant's] work computer. He proceeded to do this with a USB stick loaded with the required software. He stated that the process required him to be physically at the computer. He also explained that he connected the USB to defendant's computer several times between 2:00 p.m. and 3:00 p.m., as the imaging initially failed due to the presence of another external USB device

5

connected to the computer. Shandolow stated that after he was unable to get the image he left the office, but later returned that night, upon Rodriguez's request, sometime between 8:00 p.m. and 9:00 p.m. Shandolow used his personal ID username to log onto defendant's computer.

Shandolow testified he was at the office late that night because the imaging process kept failing and that he "probably" logged onto defendant's computer once more at approximately 12:45 a.m. the following morning after successfully getting the image to "make sure the machine was going to boot up properly." Shandolow then tested the image on a comparable computer and turned it over to Rodriguez later that day.

In addressing the chain of custody, Shandolow testified that the shared IT area was locked and permitted swipe access only for entry of IT staff. No one else had his login credentials. Shandolow denied creating, deleting, or altering anything on defendant's computer before or after imaging.

During Lucich's testimony, he refuted the validity of the imaging and stated that what was created was not a "forensic image" but rather a .wim file, which he explained as being a compressed copy, not a sector-by-sector, verifiable forensic image. Lucich also opined there was no documented chain of custody, meaning the .wim file could have been "unzipped, modified, and

6

then re-zipped . . . [without anyone] even know[ing] it."  Therefore, he concluded, "[b]ased on everything that . . . was done to [the file] before it was imaged, it has absolutely no integrity.  And in [his] opinion, it should never have been relied on by anybody for any kind of prosecution."  Essentially, it was Lucich's opinion that the "forensic image" of defendant's device that was done by Shandolow and used as evidence by the State to procure a search warrant was a modified/doctored image of the computer that someone placed on the device.

Lucich could not identify who planted the file.  He only knew someone with the username "Shando B J"[1] logged onto defendant's computer remotely and that a USB device was connected three times to the computer on October 2, 2017, when the image was taken.  Lucich concluded that someone opened the file, modified it, and then placed the modified image back on the computer.

Defendant relied on Lucich's testimony to support his PCR petition, arguing it was newly discovered evidence demonstrating the invalidity of the search warrant and requiring the granting of the petition.

Judge Toto issued a comprehensive written opinion and accompanying order denying defendant's PCR petition and motion to withdraw his guilty plea on February 20, 2024.

---

[1]  This was Shandolow's username.

A-2015-23

In the opinion, Judge Toto made a series of credibility determinations and factual findings. First, he found that Shandolow "appeared truthful and was able to remember the process for obtaining an image from an employee's computer" but that his "recollection was unclear at times." He stated that Rodriguez "appeared professional, and his recollection of events was clearer than . . . Shandolow's. He clarified points he was trying to make and came across as truthful." Judge Toto did note that Rodriguez "appeared somewhat confused" on certain things such as who he gave the copy of defendant's computer to. Judge Toto found that Lucich "appeared competent and professional," but he was "highly focused on his testimony and storyline" and became "agitated when . . . asked hypothetical questions." The judge specifically noted Lucich's testimony that it was impossible to determine whether anything had been planted onto defendant's computer.

Judge Toto found Lucich's queries regarding the access to defendant's computer and suppositions as to planted evidence were answered and explained by Shandolow, who testified he used his log in username during the denoted times to insert a USB and image defendant's computer.

Judge Toto explained:

> All these questions have been answered through . . .
> Shandolow and . . . Rodriguez's testimony . . . .

A-2015-23

Shandolow created the .wim file in the early morning hours of October 2[]-3[] "until the trains stopped running to New Brunswick." The following day he gave the file to . . . Rodriguez who kept it in a locked drawer or on his person until handing it over to [the director]. We know from the [S]tate's brief that trains to New Brunswick stop running at approximately 1:40 a.m., lending support to the assertion that . . . Shandolow was there until approximately 3:00 a.m. imaging [defendant's] computer. As for the suspicious logins using . . . Shandolow's username, . . . Shandolow testified he did not give anyone access to his login password and his are the only "suspicious" logins identified by . . . Lucich in his report. Additionally, . . . Lucich's report notes that a .wim file located on [defendant's] computer was in the "root of the system drive" . . . and was created on October 3, 2017 at 12:45[]a[.]m[.] and was last modified at 3:29[]a[.]m. Where the creation date is typically when the image creation was started, the last modified date is typically when the image was completed. This too aligns with Shandolow[']s explanation of the time he successfully created a .wim copy of the computer.

As to how a .wim copy of the image stayed on [defendant's] computer, . . . Lucich could not provide an explanation. When questioned about why someone would need to login, the only explanation . . . Lucich provided was that they shouldn't need to log in to create an image and the logins indicate that activities other than imaging occurred. And indeed, activities other than imaging were occurring. After all, . . . Shandolow was troubleshooting [defendant's] computer to figure out why the image process was failing.

Although . . . Lucich states that individuals planted a .wim file on [defendant's] computer, we now know that .wim file was not planted but was somehow

9

copied onto [defendant's] computer. Although . . . Lucich did not provide an explanation on how this could happen. The timeframes provided to this [c]ourt by . . . Lucich for the creation of this .wim file and the timeframe given to us by . . . Shandolow as to how late he was at the office attempting to copy the computer align. This quells the notion that some shadowy unidentified figure accessed [defendant's] computer late at night and planted evidence on it to frame [defendant].

Judge Toto concluded that Lucich's report actually "corroborate[d] the events that occurred as testified to by . . . Shandolow and . . . Rodriguez."

The judge also addressed defendant's argument that, under State v. Carter, the newly discovered evidence required a new trial, in this case, a withdrawal of the guilty plea. State v. Carter, 85 N.J. 300 (1981). Carter established a test, under which a court considers three factors to determine if a new trial is warranted: whether the new evidence (1) is material and not cumulative or contradictory; (2) could not have been discovered earlier with reasonable diligence; and (3) would likely change the outcome. Id. at 314.

The judge explained:

Considering the first prong, . . . Lucich's report raised significant concerns about an unknown individual accessing [defendant's] computer late at night and into the early hours of the morning and planting evidence. To address these concerns this court held an evidentiary hearing. At that hearing, this [c]ourt heard testimony from . . . Shandolow stating that he was the one who

accessed [defendant's] computer in the middle of the night on October 2, 2017 . . . . The only way for this court to determine that these findings would materially affect the case is to give credence to the idea that unknown individuals remotely accessed [defendant's] computer in the middle of the night and planted the .wim file and Middlesex tips evidence on [defendant's] computer then disappeared without a trace. Of course, we now know that . . . Shandolow was using the shandobj username and these assertions of mysterious hackers are speculation. Thus, the evidence presented here does not rise to the level of materiality necessary to constitute newly discovered evidence likely to change the decision to enter into a plea, especially considering the other evidence.

Further, the judge found that much of Lucich's report was based on data which was available prior to the plea and thus could have been discovered earlier. Therefore, since the new evidence did not show tampering, the judge found it unlikely to change defendant's decision to plead guilty.

Judge Toto also addressed defendant's argument that the search warrant relied on the "tainted" evidence provided in the affidavit for the warrant. The judge found that if the objectionable computer evidence was removed from the affidavit, there was ample remaining evidence set out in more than eight pages, to establish probable cause for a search warrant. The judge explained:

If this [c]ourt were to set aside the portions of . . . [the] affidavit that relied on the forensic imaging taken by Rutgers, there is still enough information contained in the application to find probable cause.

11

. . . .

> Given the swipe access logs, the "forced open" entries, the parking records, the corresponding log in times to [the director's] computer, [defendant's] admitted knowledge of security systems, and [defendant's] use of the director's suite in the past[,] this [c]ourt reiterates that enough probable cause existed to order a search warrant of [defendant's] home, offices, and person.

Judge Toto turned to defendant's motion to withdraw his guilty plea, undertaking an analysis of the factors set out in State v. Slater, 198 N.J. 145, 157-58 (2009). Under Slater, a court must consider "(1) whether the defendant has asserted a colorable claim of innocence; (2) the nature and strength of the defendant's reasons for withdrawal; (3) the existence of a plea bargain; and (4) whether withdrawal would result in unfair prejudice to the State or unfair advantage to the accused." Ibid.

The judge found defendant had not established a colorable claim of innocence as Lucich's findings were inconclusive or speculative. The judge explained that the newly discovered evidence was not persuasive and that claims of alleged coercion were addressed in an earlier decision as unsubstantiated.

In turning to the second factor the judge found:

> As for the nature and strength of reasons for withdrawal, the defense argues two points. First, that [defendant's] plea was coerced and second, that the plea

> withdrawal should be granted based on newly discovered evidence. This [c]ourt dismissed the coercion argument in its first opinion stating that the State's assertion to bring indictments against the defendant was more of a factual assertion than a threat. As with any criminal prosecution where there are suspected co-conspirators, the next procedural step would be to seek grand jury indictments against those individuals.

Finally, under the third factor, the judge found neither party would be "unfairly prejudiced or receive an unfair advantage if the plea were vacated."

In sum, Judge Toto found that defendant failed to establish Lucich's computer forensics report was newly discovered evidence and demonstrate it was material to warrant the grant of PCR, and the withdrawal of his guilty plea.

"[PCR] is New Jersey's analogue to the federal writ of habeas corpus." State v. Pierre, 223 N.J. 560, 576 (2015) (quoting State v. Preciose, 129 N.J. 451, 459 (1992)). PCR provides "a built-in 'safeguard that ensures that a defendant was not unjustly convicted.'" State v. Nash, 212 N.J. 518, 540 (2013) (quoting State v. McQuaid, 147 N.J. 464, 482 (1997)).

Our "review is necessarily deferential to a PCR court's factual findings based on its review of live witness testimony" in an evidentiary hearing. Ibid. That is partly because "[a]n appellate court's reading of a cold record is a pale substitute for a trial judge's assessment of the credibility of a witness he has

13

observed firsthand." Ibid. However, a PCR court's interpretation of the law is reviewed de novo. Id. at 540-41.

Defendant argues the PCR court's findings were not supported by substantial credible evidence because the State failed to sufficiently rebut Lucich's report. We disagree.

After conducting an evidentiary hearing, Judge Toto painstakingly discussed the proffered evidence and concluded Lucich could not establish that anyone other than Shandolow had accessed defendant's computer. On the contrary, the Institute's witnesses corroborated the timeline and events discussed in Lucich's report. According the factual findings their due deference, we are satisfied Judge Toto's findings were supported by the sufficient credible evidence in the record.

For the reasons previously expressed, we similarly defer to the judge's findings that defendant was not entitled to a new trial or to withdraw his guilty plea as he could not satisfy the requisite factors under either Carter or Slater. In addition to citing the Institute witnesses' explanations regarding Lucich's suspicions concerning access to defendant's computer, the court further found that, even without this evidence, probable cause still existed for law enforcement to obtain a warrant.

To the extent we have not commented on any of defendant's remaining arguments, we have determined they lack sufficient merit to warrant discussion in a written opinion.  R. 2:11-3(e)(2).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

M.C. Harley

Clerk of the Appellate Division

A-2015-23